James **SEAGO**, Plaintiff,

v.

**NORTH CAROLINA THEATRES, INC.,** Wilby-Kincey Service Corporation, Paramount Film Distributing Corporation, Metro-Goldwyn-Mayer, Inc., Twentieth Century-Fox Film Corporation, Universal Film Exchanges, Inc., Warner Bros. Pictures Distributing Corporation, United Artists Corporation, Allied Artists Southern Distribution Corporation, and Key Theatres, Inc., Defendants.

Civ. No. 1341.

United States District Court
E. D. North Carolina,
Raleigh Division.

Dec. 29, 1966.

**629**

F. T. Dupree, Jr., of Dupree, Weaver, Horton, Cockman & Alvis, Raleigh, N. C., W. Bradley Ryan, of Ryan & Ryan, Boston, Mass., for plaintiff.

Kenneth C. Royall, Charles F. Young, of Royall, Koegel & Rogers, New York City, for defendants Paramount Film Distributing Corporation, Metro-Goldwyn-Mayer, Inc., Twentieth Century-Fox Film Corporation, United Artists Corporation, Universal Film Exchanges, Inc., Warner Bros. Pictures Distributing Corporation, Columbia Pictures Corp. and Allied Artists Southern Distribution Corporation.

James B. Lovelace, of Lovelace & Hardin, High Point, N. C., for defendant Key Theatres, Inc.

Ernest S. DeLaney, of Bradley, Gebhardt, DeLaney & Millette, Charlotte, N. C., for defendants Consolidated Theatres, Inc. and Howco Productions, Inc.

Fred B. Helms, of Helms, Mulliss, McMillan & Johnston, Charlotte, N. C., for defendants North Carolina Theatres, Inc. and Wilby-Kincey Service Corporation.

OPINION AND ORDER

LARKINS, District Judge.

SUMMARY

This cause comes before the Court as a civil action for treble damages and arises from alleged violations of the Anti-Trust Acts of the United States (The Sherman Act, Title 15 U.S.C.A. Sections 1, 2 and 7; and The Clayton Act, Title 15 U.S.C.A. Sections 12, 15, 16 and 22). Plaintiff alleged, upon filing the complaint on December 29, 1961, that three separate but related violations of the Anti-Trust Acts occurred causing him monetary damages for which he prays recovery. Jurisdiction in the Federal Court of the matters alleged is provided for in the Anti-Trust Acts and is not in dispute.

The nature of the three alleged violations of the Anti-Trust Acts may be summarized as follows: The first insists that a conspiracy of nation-wide significance existed, during the period in suit (from 1953–1960), to monopolize and restrain interstate commerce and trade in the distribution of motion pictures and films for public exhibition; the second is an alleged local conspiracy to monopolize the distribution of motion picture films for exhibition in Raleigh, North Carolina; and the third is an alleged existence of a monopoly in the distribution, licensing and exhibition of films in Raleigh, North Carolina.

Defendants Columbia Pictures, Howco Productions and Consolidated, Inc., have been dismissed from the suit upon agreement of the plaintiff and to his prejudice.

The defendants presently remaining in the case have denied all the alleged violations of the Anti-Trust Acts and have pleaded Title 15 U.S.C.A. Section 15b in bar of any recovery for any actions occurring prior to December 29, 1957.

These defendants fall into three categories with some overlapping. The local Raleigh theatres, their owners and managers representing the Ambassador Theatre, the State Theatre, and the Village Theatre, are in the first category. Those in the second category are the distributors of films to the local theatres. The last or third category is composed of parent firms of national standing.

At the first scheduled pre-trial conference of this action, all of the defendants moved for summary judgment of dismissal. In support of their motions, many affidavits and consolidated briefs were filed. Plaintiff replied to the motions and insisted that a proper response thereto could not be accomplished without completing discovery. The Court, therefore, allowed numerous depositions to be taken and all discovery to be completed. Thereafter, plaintiff James Seago submitted two affidavits for the purpose of opposing defendants' motions. Mr. Seago had previously submitted another affidavit which has been considered in opposition to the motions. Accompanying briefs have also been submitted.

Before the Court at this time for its consideration are the motions for summary judgment of dismissal filed by the remaining defendants.

## FINDINGS OF FACT

The defendant North Carolina Theatres, Inc., is a corporation duly organized by law and has its usual place of business in the City of Raleigh, North Carolina. For many years it has been engaged in the operation of the Ambassador Theatre, the Varsity Theatre and the Tower Drive-In Theatre, all in the City of Raleigh, North Carolina. For several years it has also been engaged in operating some fifty-five or more other theatres and in managing or supervising the operation of a number of other theatres in the State of North Carolina. Hereafter, it will be referred to as "North Carolina Theatres."

The defendant Wilby-Kincey Service Corporation (hereafter referred to as Wilby-Kincey) is a duly organized corporation with its principal place of business in Charlotte, North Carolina. It is engaged in the business of managing and supervising the operation of a large number of theatres in the States of North and South Carolina, including the Ambassador and Varsity Theatres and the Tower Drive-In Theatre in the City of Raleigh.

The former defendant Consolidated Theatres, Inc. (referred to hereafter as Consolidated) is a corporation duly organized with Raleigh, North Carolina as its principal place of business. For many years it has been engaged in the operation and management of the Village Theatre and the Forest Drive-In Theatre in the City of Raleigh and various other theatres in North and South Carolina. Defendant Consolidated sold the Colony Theatre to plaintiff Seago in 1953. Consolidated has compromised and settled plaintiff's claim against it.

The defendant Key Theatres, Inc. is a corporation duly organized in North Carolina which transacts business in the City of Raleigh. It has been engaged in the operation and management of the State Theatre in the City of Raleigh and one other theatre in the State of North Carolina.

The remaining defendants are all corporations duly organized by law and have their principal places of business in the City and State of New York and transact business in the Eastern District of North Carolina. The defendants Metro-Goldwyn-Mayer, Incorporated (formerly Loew's, Incorporated), Twentieth Century-Fox Film Corporation and the former defendant Columbia Pictures Corporation are now and for some time have been engaged in the business of producing and distributing motion picture films; and the other corporations (except the defendant exhibitors) are now and have been engaged in the business of distributing said films. Hereafter, said corporations will be referred to as the "defendant distributors" and will be designated respectively by the names by which they are generally known in the trade: Paramount, MGM, Fox, Warner, United Artists, Universal, Columbia, Howco (which has been dismissed from the action), and Allied Artists.

For many years the defendant distributors have distributed not only a great majority of the motion picture films produced each year in this country, but also a large portion of the only films having any commercial value.

Plaintiff James Seago was the operator of the Colony Theatre in Raleigh, North Carolina, from 1953–1960, inclusive. In 1953, Seago purchased the equipment and machines then in the Colony Theatre for $7,500.00. After he purchased the theatre, he alleges that he spent an additional $15,000.00 for improvements made to the theatre. At the time he commenced operation, he alleges that he had eighteen years of paid employment in the motion picture business. His former duties consisted of being a projectionist for Wilby-Kincey in Fayetteville, North Carolina, starting in 1942. He states that during this employment he assisted in making the running schedules, newspaper ads, box office reports and inventories. After serving in the armed services, Seago started college but soon thereafter returned to the employment of Wilby-Kincey in Lumberton, North Carolina. Plaintiff Seago alleges in his complaint that prior to 1953 the defendants and various other persons and corporations entered into unlawful combination and conspiracy to restrain and to monopolize interstate commerce and trade in motion picture films. He further alleges that the purposes of the combination and conspiracy were to limit and control the distribution and exhibition of motion picture films in interstate commerce; to adopt and to put into effect a nation-wide system of structures and runs, clearances and admission prices; (with the exception of United Artists) to adopt and put into effect the practices of block booking and blind buying; by means of franchises, master contracts, formula deals and other methods and means, to grant to controlled theatres privileges and preferences not granted to independent theatres, including the said theatre operated by the plaintiff; and to minimize, suppress and eliminate the competition of independent distributors and exhibitors. Seago alleges in his complaint that pursuant to the combination and conspiracy, the defendants and other persons have engaged in the practices and entered into the agreements and committed the acts herein alleged. He states that the defendants have maintained a uniform system of runs, clearances and admission prices for motion picture theatres and that the defendant distributors have declined to contract with or to deliver films to the plaintiff except in accordance with the said system. He further states that the clearance was an unreasonable protection. Seago alleges that the defendant distributors have discriminated against the plaintiff in the following particulars:

1. they have granted moveover privileges;

2. they have given special concession in film rentals and special reductions in the license fees charged to the plaintiff's competitors;

3. they have charged the plaintiff excessive license fees;

4. they have failed to deliver films in violation of the contract between the plaintiff and the distributors;

5. they refused to license first-run films to Seago unless he would bid with theatres that were not in substantial competition with him;

6. they conducted competitive bidding between the plaintiff and the defendant exhibitors in such a manner that irrespective of the value of the plaintiff's bids as compared to those of the defendant exhibitors, the plaintiff was unable to secure films for which he had bid;

7. they permitted the defendant exhibitors to exhibit its films without a formal written contract or license agreement and to exhibit films on a "terms later basis".

Plaintiff alleges that the defendant exhibitors have exercised their circuit buying power to induce or coerce the defendant distributors in supplying first-run pictures to the exclusion of the plaintiff. According to Seago, the defendant exhibitors and defendant distributors have ignored the system of competitive bidding, and the defendant exhibitors have paid excessive film rentals in order to keep the plaintiff from getting films. Seago alleges that the above-mentioned acts of the defendants were carried out in an attempt to secure a monopoly in the exhibition of first-run films in the City of Raleigh. Plaintiff further states that the above-mentioned acts of the defendants have been successful in that he became financially embarrassed and was unable to pay his obligations. In the third count of his complaint, Seago alleges that the defendant exhibitor Wilby-Kincey has entered into master agreements with the defendant distributors and has exercised its circuit buying power. Also, in count three, the plaintiff complains that the defendant exhibitors have secured from the defendant distributors the privileges and preferences specified in earlier parts of this opinion.

## CONCLUSIONS OF LAW

 Defendants have made motions for summary judgment. Plaintiff resisted the motions and claimed that he had not had adequate time in which to finish his discovery, and for that reason the motions were continued until such time as the plaintiff could complete his discovery. Plaintiff, through counsel, has taken numerous depositions of persons involved in the motion picture industry. These depositions run to many hundreds of pages. At the close of all discovery, defendants renewed their motions for summary judgment which are now before the Court. In support of their motions they have filed numerous affidavits which are all basically the same; that is to say, that there have not been any of the practices as alleged in the plaintiff's complaint. Plaintiff has objected to these affidavits as stating conclusions, as being mere general denials, as attempting to draw fallacious conclusions, and as being insufficient to shift any burden to the plaintiff. The Court agrees in part with the plaintiff in that the affidavits are full of conclusions and general denials, but this does not mean that the defendants' affidavits are to be thrown out and cast aside as these affidavits also state evidential facts as required by Rule 56(e) of the Federal Rules of Civil Procedure. This Court, therefore, holds and decides that these affidavits were in fact sufficient to cause the plaintiff to go forward with affidavit or other means to show evidentiary facts as required by the Federal Rules. Even if the affidavits were not sufficient, this would not prevent the Court from granting summary judgment. Rule 56(e) of the Federal Rules of Civil Procedure permits a motion to be made without supporting affidavits, and Rule 56(c) contemplates that the Court shall consider the "pleadings, depositions, and admissions on file, together with affidavits, if any." Hoston v. J. R. Watkins Company, 300 F.2d 869 (9th Cir., 1962). It is also important to note that in the Hoston case, supra, that the ruling was made completely on the plaintiff's depositions which he had taken of the defendant's employees. Defendant's only affidavit in that case was legally insufficient. See also Pen-Ken Gas and Oil Corp. v. Warfield Natural Gas. Co., 137 F.2d 871 (6th Cir., 1943), Jeffress v. Weitzman, 95 U.S.C.App.D.C. 261, 221 F.2d 542 (1955). Besides the affidavits presented by the defendants, there are also the depositions taken by the plaintiff which do not support his claims but in fact support the contentions of the defendants. Plaintiff must, therefore, go forward and produce evidentiary facts which will in fact support the contentions raised in his voluminous complaint and briefs. This has not been done.

The Motions now pending before this Court were filed pursuant to Rule 56 of

the Federal Rules of Civil Procedure and more particularly Rules 56(c) and 56(e), which provide as follows:

"(c) *Motion and Proceedings Thereon*

The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

* * * "

"(e) *Form of Affidavits; Further Testimony; Defense Required.*

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. As amended Jan. 21, 1963, eff. July 1, 1963."

Defendants have conceded in their brief that prior to the effective date of the amendment that plaintiff in some jurisdictions, such as the Third Circuit, might have raised an issue of fact merely by filing an affidavit saying that defendants' contentions were wrong or even on his pleadings alone, but they claim that this situation no longer prevails. Plaintiff is now required, based upon personal knowledge, to set forth such facts as would be admissible in evidence and show that he is competent to testify with respect to such matters. Rule 56(e) of the Federal Rules of Civil Procedure was amended to take care of a two rigid standard on motions for summary judgment and to enable the Court, after extensive pre-trial discovery proceedings, to dispose of litigation without the necessity for a protracted trial. This is plainly set forth in the Advisory Committee's Notes with respect to the last two sentences in Rule 56(e), which constitute the amendment to that section of the rule in 1963. Those notes read, in part, as follows:

"The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation the Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are 'well pleaded,' and not suppositions, conclusory, or ultimate." (citations omitted)

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings

themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purposes of the rule. See 6 Moore's Federal Practice 2069 (2d ed. 1953); 3 Barron and Holtzoff, supra, § 1235.

"It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment."

In Waldron v. British Petroleum Co., 38 F.R.D. 170 (S.D.N.Y.1965), a private anti-trust case, the defendant Cities Service Co. initially made a motion for summary judgment in 1960 under Rule 56(e) of the Federal Rules of Civil Procedure on the ground that plaintiff had failed, in his affidavits, to set forth specific facts showing that there was a genuine issue for trial. This motion was adjourned for the purpose of enabling plaintiff to conduct limited pre-trial discovery. The Court said at that time "(t)he naming of Cities Service Co. as a defendant herein when the complaint was drawn was based only on suspicion and on a gossamer inference drawn from the mere sequence of events." The Court in the Waldron case went further and said that "[t]he single issue before the court relating to Cities' motion for summary judgment is whether plaintiff's discovery has unearthed a 'genuine issue (of fact) for trial' where nothing had existed before but 'suspicion' and 'gossamer inference drawn from the mere sequence of events.' "

"The crucial facts which plaintiff must produce in order to survive Cities motion for summary judgment are evidentiary data tending to prove that Cities became a party to the alleged conspiracy. These evidentiary data have not been forthcoming. Even the 'gossamer inference' that existed in 1961 has become attenuated into nothingness as a result of the pre-trial record developed during the last four years."

The Court concluded by saying:

"The case against Cities has gone far enough. More than five years have elapsed since Cities first made this motion for summary judgment. Plaintiff has had ample time and opportunity to discover and present concrete particulars demonstrating that there is a genuine issue for trial. At this late day plaintiff still cannot point to specific facts or evidentiary data."

Judge Herlands in the Waldron case, supra, relied on Dressler v. MV Sandpiper, 331 F.2d 130 (2nd Cir., 1964), and Scolnick v. Lefkowitz, 329 F.2d 716 (2nd Cir., 1964). In the Scolnick case, plaintiffs alleged a conspiracy to violate their civil rights and their constitutional rights by placing them in a mental institution. The district court granted summary judgment as to the alleged conspiracy to violate the statute. The Court said:

"(W)hile plaintiffs vaguely assert that the defendants departed from the scope of their official duties in a conspiracy to incarcerate them illegally in a mental institution, Judge Murphy's award of summary judgment as to this allegation was clearly proper. Defendants' detailed affidavits, categorically denying the existence of such a conspiracy—and, in the case of Lefkowitz, denying knowledge of the plaintiffs' very existence—were sufficient to require the plaintiffs to 'set forth specific facts showing that there is a genuine issue for trial' under the recent amendments to Rule 56(e)."

In Dressler v. MV Sandpiper, 331 F.2d 130 at 133 (2nd Cir., 1964), the Court said "(T)he highly general assertions of Fanale's answer to the libel, buttressed by no specific facts or evidentiary data, are hardly the sort of concrete particulars which the amendment sought to require." Although this case dealt with Rule 58 of the Admiralty rules, the Court in the above-quoted passage was referring to Rule 56 of the Federal Rules of Civil Procedure, which the Court called

a carbon copy. It is important to note that the sufficiency of the allegations of a complaint do not determine the motion for summary judgment, for if this were the case, Rule 56 would be a nullity for it would merely duplicate the motion to dismiss. Lindsey v. Leavy, 149 F.2d 899 (9th Cir., 1945).

It now becomes necessary to decide if the plaintiff by his own affidavits and the depositions of the defendants' employees, both former and present, has raised any issue of material fact which would defeat the motions for summary judgment. Plaintiff's first affidavit states that it was the purpose of the plaintiff to run the Colony Theatre as a "first-run theatre," and that the Colony was qualified to be a first-run theatre. Plaintiff's second affidavit states that it is his opinion, based on his experience, that he had made superior bids on a large number of pictures which were awarded to defendant exhibitors. In his third affidavit, he states his qualifications to rate the pictures as to his superior bids and goes on to classify various pictures upon which he had bid. Plaintiff has mentioned the alleged preferences or concessions which he so strongly insists happened in his complaint, but he has not alleged facts which would support these allegations.

Plaintiff cites as additional evidence of a conspiracy the denial of the right to bid for certain periods of time. Taking the depositions as true, which recite that competitive bidding was discontinued for periods of time during the time in which Seago ran the Colony Theatre, this does not in itself establish that there was in fact a conspiracy, nor is it evidence of a conspiracy. Plaintiff does not introduce facts which would show that the bidding was discontinued because of any common plan or design.

In Brown v. Western Massachusetts Theatres, Inc., 288 F.2d 302 at 304 (1st Cir., 1961), the Court said:

"* * * We have no doubt, however, that a jury could have concluded that competitive bidding by the particular distributors in question was not always what it purported to be, or concluded that, in the instances shown, plaintiff's bids were not considered on an equal footing with defendant's. But the real issue is what legal significance could be attributed to such a finding. To determine this the status of competitive bidding in the motion-picture industry is a necessary background. In United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 161–166, 68 S.Ct. 915 [92 L.Ed. 1260,] the court set aside that part of the district court's decree which required first-run films to be distributed among exhibitors according to a competitive-bidding system. To a large extent the court's holding in this respect was based on its belief that it would often be impossible to evaluate the bids, and equally difficult to determine when a distributor's preference of one exhibitor over another, for reasons not appearing on the face of a bid, was an exercise of valid business judgment and not the result of illegal favoritism. Id., 334 U.S. at page 163, 68 S.Ct. at page 932. Of course this is not to question that competitive bidding is one acceptable method of distributing films for exhibition. But cf. id. 334 U.S. at pages 164–165, 68 S.Ct. at pages 932–933. It does indicate, however, why a departure from competitive bidding does not in itself constitute or prove a violation, and cannot be helpful to the plaintiff unless he can rationally relate it to other conduct by the alleged conspirators."

Plaintiff has inserted the idea that the lack of competitive bidding at all times is in fact evidence of a conspiracy. This Court disagrees. Producers and distributors of motion picture films are not required to license their products to every exhibitor who desires or requests them. "An exhibitor does not have the absolute

right to compel producers and distributors to furnish him films or to give him the privilege of exhibiting them on the basis of any specified run." Loew's Inc. v. Cinema Amusements, Inc., 210 F.2d 86 at 92 (10th Cir., 1954), certiorari denied in 347 U.S. 976, 74 S.Ct. 787, 98 L.Ed. 1115. Plaintiff, through counsel, admits in his brief that the defendant Universal discontinued bidding in May 1959. Plaintiff claims that it is a question for the jury as to whether or not Universal discontinued bidding because Seago owed them money or because this was a part of the conspiracy against him. Plaintiff alleges by brief that defendant Allied Artists, despite written requests for competitive bidding by the plaintiff in 1954, 1955 and 1957, did not allow the plaintiff the right to bid for first-run films in Raleigh until about August 30, 1960. As previously mentioned, defendant Universal discontinued bidding in May 1959 through the closing of plaintiff's theatre in December 1960. The plaintiff alleges that he was deprived of the right to bid for Fox pictures first-run in Raleigh on October 3, 1960. The plaintiff further alleges that the defendant distributor Warner did not allow plaintiff the right to bid for first-run films in Raleigh until December 21, 1954, almost 18 months after plaintiff opened his theatre. Competitive bidding was in effect from December 21, 1954 until April 23, 1958, with defendant Warner, when it was discontinued as to the plaintiff Seago. Defendant Warner alleges that it was discontinued because of the failure of the plaintiff to bid on fourteen pictures. Plaintiff alleges that he was allowed to bid again after February 4, 1959, after writing a letter to the Attorney General's office complaining about not being allowed to bid. Taken as true, plaintiff only establishes that he was not allowed to bid on pictures at different times during the period from 1953 to 1960, inclusive. This does not establish conspiracy or even evidence of a conspiracy standing alone. Plaintiff admits that when competitive bidding was not in effect the pictures were licensed by negotiation, although he does claim that he was not allowed to negotiate for films. Even though competitive bidding was in effect for a majority of the time during the period from 1953 through 1960, it was discontinued at different times by different distributors. Plaintiff has not produced any evidence which would show that the discontinuance of bidding by the different distributors was anything other than the independent and uninfluenced choice of each distributor, and there is nothing illegal about the discontinuance of competitive bidding so long as it is not the result of a common plan to monopolize the trade or industry or otherwise violate the antitrust laws.

■■ Plaintiff further alleges that there is evidence of the circuit buying power of the defendant exhibitors Wilby-Kincey, North Carolina Theatres, and Consolidated Theatres. Plaintiff alleges that this fact is established by the depositions of the representatives of Consolidated and Wilby-Kincey, and the representatives of MGM, Universal, Paramount, Warner and the former defendant Columbia. In substance, the depositions indicated, according to the plaintiff's allegation, that a representative of the particular defendant distributor would go to the office of the defendant exhibitor and attempt to license whatever pictures were available to substantially the theatres where the distributor regularly sold his product, if possible; and that frequently, as a result of a particular day's negotiations, a deal would be made to license a picture of that defendant distributor for exhibition at a large number of the theatres of the defendant exhibitor. John W. Kirby testified in his affidavit that he would attempt to sell as many pictures as he could, theatre by theatre, town by town, with the particular organization. The testimony revealed in the other depositions was to the same effect. Plaintiff attempts to claim that this is evidence of circuit buying, but

again this Court does not agree. One would not expect the distributors' representative to attempt to license just one picture at each trip to the buyer's office. He would not be expected to license one picture, leave the office, walk around the block and then come back into the office and license another picture. The mere fact that the distributors and the exhibitor or his buying agent licensed more than one picture for more than one town at one sitting is not per se conspiracy or even evidence of a conspiracy. Again, there does not appear to be any evidence of a common plan, scheme or common design, but just the fact that the operations were carried out in the most economical way possible. Block buying, as the plaintiff insists, is illegal per se, but this does not mean to say that films may not be licensed more than one at a time. Block buying becomes illegal only when there is a requirement that the individual buyer purchase or license one film in order that he be able to license another, but films may be sold in blocks or groups where there is no requirement, express or implied, for purchase of more than one film. Krinsley v. United Artists Corp., 119 F.Supp. 665 (N.D.Ill.1954), United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948).

Plaintiff also alleges as evidence of a conspiracy that there was a substantially uniform structure of runs and clearances in effect in Raleigh on the products of the defendant distributors and the defendant exhibitors. Plaintiff, in his brief, through counsel, states:

"It should be noted that the statements in paragraph 3 that there were no move-over runs, franchises, master agreements, master contracts, or blanket deals, or formular deals is also, of course, factual. However, those particular practices are only background to the present conspiracy, and have not been relied upon by plaintiff with regard to the conspiracy charged. * * The plaintiff has no knowledge of the existence of particular practices such as blind buying, block booking, or franchises any place in the country after 1950, because those particular practices were eliminated after the Paramount case."

Plaintiff's Reply Brief in Opposition to Motion of Defunct Defendant for Summary Judgment, Page 9, Transcript of Motion Hearing, p. 66.

█ Plaintiff claims that the uniform structure of runs is to be considered as evidence of a conspiracy along with his previous contentions. In his third affidavit he says that there is a substantially uniform system ranging from a minimum of 30 days clearance to a maximum of 45 days, depending on the particular distributor. In his brief he says that the defendant Paramount had in effect a 42-day clearance during the period 1954–1957, which was subsequently changed to 35 days; the former defendant Columbia had a 45-day clearance in the 1959–1960 season. The defendant Fox had a 35-day clearance in 1956, and it was still in effect in 1960. The defendant Warner had in effect a 30-day clearance in 1957. Plaintiff also attempts to make a point of the desire of Wilby-Kincey and North Carolina Theatres to have as long a clearance as possible on the pictures exhibited first-run at the Ambassador, as illustrated by the statements of Roy Smart; that a 35-day clearance was barely reasonable; and that he would like to have had more clearance. There is nothing illegal per se about a clearance so long as it is reasonable. In all the depositions taken by the plaintiff the testimony was to the effect that the clearances, which in fact did exist, were reasonable. Plaintiff cannot establish a conspiracy by the fact that clearances were in effect in the Raleigh area. He must show that they were in fact unreasonable, and that they were in fact used pursuant to a common plan or design to discriminate against the plaintiff. Orbo Theatre Corporation v. Loew's, Incorporated, 156 F.Supp. 770 (D.C.D.C.1957),

affirmed in 104 U.S.App.D.C. 262, 261 F. 2d 380 (1958), certiorari denied in 359 U.S. 943, 79 S.Ct. 725, 3 L.Ed.2d 677 (1959), Robbinsdale Amuse. Corp. v. Warner Bros. Pic. Dist. Corp., 141 F. Supp. 134 (4th Div.Minn.1955).

Plaintiff also claims that the fact there was a split product between the Ambassador Theatre and the State Theatre is evidence of a conspiracy. This alleged agreement was to the effect that the Ambassador would bid for the product of certain distributors and the State would not bid against them for this product. The State Theatre, in like effect, was to have the right of bidding for the product to certain distributors, with the Ambassador submitting bids against them. The agreement or the fact of common knowledge of the practice was denied in the depositions which were taken of the representatives of the organizations involved; however, taking the case in the light most favorable to the plaintiff as the Court is required to do on a motion for summary judgment, there is evidence from which it could be inferred that in fact there was a split product. For this reason, it becomes necessary to decide what effect, if any, a split product would have as being or not being evidence of a conspiracy. Plaintiff claims that the agreement, if in fact there was an agreement, had its effect to limit competition among the motion picture exhibitors. Assuming arguendo, that this is true, it would not have damaged plaintiff since the effect would have been that the plaintiff would have had to bid only against the Ambassador or the State depending upon which distributor he was dealing with. It would have in effect made it easier for the plaintiff to obtain pictures since he would not have had to bid against as many exhibitors as he would have, had there been no split product. There is not any evidence that the effect of this split of product, if in fact there was a split, was to foreclose the plaintiff from being allowed to license films or to compete in the bidding and negotia-

tion for the films. In Viking Theatre Corporation v. Paramount Film Distributing Corp., 320 F.2d 285 at 292, 293 (3rd Cir., 1963), the Court said:

"The plaintiff argues preliminarily that a split system, which, as here, does not include all exhibitors in the competitive area, constitutes a per se violation of the antitrust laws. It is not argued that all split systems are illegal; the substance of the plaintiff's argument is that those which do not include all exhibitors are per se illegal. We do not agree. We have heretofore noted that each exhibitor was at all times afforded the opportunity to license the pictures of each distributor notwithstanding the split. There is no evidence that any exhibitor requesting participation in the split of product would have been excluded.

" * * * There is no evidence in this case that the split system, standing alone, had this effect, or was so intended. Therefore, we decline to hold the split system to be per se illegal, and we do not consider the system, standing alone, as evidence of a conspiracy to violate the antitrust laws."

The anti-trust laws do not require that a business cut its own throat.

The Viking case, supra, is very similar to the case at hand. It was an anti-trust action by the owner and operator of a motion picture theatre against the distributors and exhibitors of motion pictures. The District Court held for the defendant saying that the evidence failed to present a jury question as to whether the defendants were guilty of discriminatory conduct from which it could be inferred that a conspiracy existed. The evidence was declared legally insufficient and the Court directed a verdict for the defendants. Plaintiff had claimed that there was a routine rejection of his superior bids or offers and that this was evidence of a conspiracy. He claimed that he was required to offer excessive rentals as a prerequisite to being licensed films. He alleged that there was an adjustment of

film rentals and playing time in favor of the defendants and the denial of similar adjustments, and that he was required to make extensive commitments as to playing time in order to license films. Plaintiff in this case alleges, as did the plaintiff in the Viking Theatre case, supra, that he submitted superior bids on pictures which were subsequently licensed to the defendant exhibitors. His claim rests upon the offer of longer playing time and a higher percentage of his gross receipts. He urges that it may be inferred from this fact that the distributors rejected his bids and offers with intent to injure him pursuant to a common scheme. The Court in the Viking Theatre case answering at page 295 these same contentions said:

" * * * In our opinion, the comparisons failed to support the inference urged.

"The technique employed to arrive at the comparisons can be afforded but little legal significance. * * * The admission that plaintiff required substantially more playing time to achieve comparable grosses is not unimportant in an evaluation of the financial terms of competing bids. * * * We note further that the comparison technique generally ignores such terms as the availability date and the length of playing time.

"Another defect inherent in the comparison technique is its reliance upon a hindsight determination of the grossing power of films. * * *

" * * * Plaintiff's claim of superiority, therefore, rests on pure conjecture."

In the Brown case, supra, 288 F.2d 302 at 305, the Court said in footnote 7:

"Plaintiff constantly refers to the fact that it is theoretically possible for a small house to gross more than a large one on a given film by having a longer run. His argument, in addition to not having been testimonially connected to Greenfield, overlooks the fact that long runs delay the use of the print elsewhere."

If the evidence construed most favorably in behalf of the plaintiff would justify or require a directed verdict against him, the Court should enter summary judgment for the defendants. Dulansky v. Iowa-Illinois Gas and Electric Co., 10 F.R.D. 566 (S.D.Iowa 1950), Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766 (1950). A popular formula is that summary judgment should be granted on the same kind of showing as would permit direction of a verdict were the case to be tried. Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64 S. Ct. 724, 88 L.Ed. 967 (1944). The theory underlying a motion for summary judgment is substantially the same as that underlying a motion for a directed verdict. The essence of both motions is that there is no genuine issue of material fact to be resolved by the trier of facts. In accordance with the theory of a directed verdict, a court should not grant summary judgment where it could not properly direct a verdict although it might properly set aside a verdict as being against the weight of the evidence, and summary judgment should not be granted on the ground that if a verdict were rendered for the adverse party the court would set it aside. Fuqua v. Deapo, 34 F.R.D. 111 (W.D.Ark., 1964). It is important to note, however, that facts sufficient to preclude granting of summary judgment cannot be based on sheer speculation rather than the drawing of logical inferences. Fiumara v. Texaco, Inc., 204 F.Supp. 544 (E.D.Pa., 1962), affirmed in 310 F.2d 737 (3rd Cir. 1962). As the Court said in the Viking Theatre case, supra, 320 F.2d 285 at 296:

"Because of the unsubstantial nature of the comparison technique employed and the equivocal results obtained by the application of that technique, we are of the opinion that it would be impermissible to allow a jury to draw the inference that the rejection of the plaintiff's bids resulted from an

intent to discriminate. A jury is permitted to draw only those inferences of which the evidence is reasonably susceptible, and may not be permitted to resort to speculation. Therefore, we hold that the evidence was insufficient to support the claim that the distributors rejected superior bids of the plaintiff in furtherance of a common plan."

A mere scintilla of evidence is not enough to create an issue; there must be evidence on which a jury might rely. McVay v. American Radiator & Standard S. Corporation, 1 F.R.D. 677 (D.C.Pa., 1941), affirmed 119 F.2d 593 (3rd Cir. 1941). A party may not escape summary judgment on the mere hope that something will turn up at the trial.

■ Plaintiff has failed to raise a genuine issue of material fact in opposition to the motions for summary judgment by the defendants. He had not alleged evidentiary facts in his affidavits and the plaintiff's depositions do not raise the necessary issue of fact to resist the motion. He has attempted to raise an issue of genuine fact by his theory that he has submitted superior bids for the motion pictures, but this is without legal force and amounts only to speculation or conjecture, and he would not be allowed to go to the jury based upon such contentions. Plaintiff has attempted to raise other issues of material fact in his allegations as to runs and clearances, split of product, circuit buying or block booking, but his evidence has not established any illegality or even evidence of a conspiracy by the facts as appear from this record, taking them in the light most favorable to the plaintiff.

Plaintiff has alleged many things which when taken with some other factors, which are lacking here, could be considered evidence of a conspiracy. He alleged runs and clearances are evidence of a conspiracy, but he has not alleged facts which would show that the runs and clearances were unreasonable. He has alleged a split of product, but he offers no proof to show that the Colony Theatre was foreclosed from entering into negotiations or the competitive bidding because of any split of product. He has alleged that there was evidence of circuit buying, but he does not show any proof that the licensing of one film was contingent upon the licensing of other films. Plaintiff's evidence does not show the required plus factor and, therefore, he has not raised a genuine issue of material fact.

Plaintiff has not offered any evidence of a common plan, scheme or design among the alleged conspirators. He has not offered any evidence which would allow him to prove conspiracy by similarity of conduct in that the record does not disclose evidence of a mutual awareness of action or conscious parallelism.

The plaintiff has presented a very forceful case in his complaint, but he has been unable to support his allegations by evidentiary facts as he must do to resist the motion for summary judgment. Plaintiff has used many of the stock phrases which have been identified with this type of action, but when the Court examines that part of his contentions which remain after disregarding that which is legally insufficient or mere surplusage, it becomes clear that his claim is without substance.

## ORDER

Therefore, it is ordered and adjudged that the motions for summary judgment be and the same are allowed.