Lucyna B. PHAIR

v.

MONTGOMERY COUNTY
PUBLIC SCHOOLS.

No. Civ.A. 96–1060–DKC.

United States District Court,
D. Maryland.

Sept. 25, 1997.

Lucyna B. Phair, Silver Spring, MD, pro
se.

Charles W. Thompson, Jr., Edward Barry
Lattner, Linda Berk Thall, Rockville, MD,
for Montgomery County Public Schools.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Lucyna B. Phair has filed a *pro se* complaint alleging violations by her employer, Montgomery County Public Schools, of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633(a) ("ADEA") and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* Defendant moved in January of this year for summary judgment. Plaintiff then was granted an extension of time in which to respond until fifteen days after the resolution of a discovery dispute. After disposition of that dispute by a magistrate judge, Plaintiff, in June, responded to the motion for summary judgment and, in July, moved for leave to supplement her opposition. Defendant responded to neither the opposition nor the motion to supplement it and time has run for such filing. The motion to supplement will be granted and the case is deemed to be ready for disposition without a hearing pursuant to Local Rule 105.6. Although Plaintiff's complaint can be read to allege several violations,[1] Plaintiff states clearly in her memorandum in opposition to the motion for summary judgment that the only claim for which she seeks relief is that she was denied promotion because of her age. Nonetheless, given the remedial nature of the civil rights statutes and liberal construction which the court allows pleadings and papers submitted by pro se litigants, *See, Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the court also will examine this case in the perspective of a Title VII retaliation claim, which is specifically mentioned in the complaint.

### I. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. On the other hand, on those issues on which the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

---

1. It was so read and addressed by Defendant in its motion for summary judgment.

## II. Background

Plaintiff is a 59–year–old woman born and educated in Poland. She has both undergraduate and graduate degrees. English is a second language to her. In 1972 she began working for Defendant as a substitute teacher and in 1975 she was hired as an ESOL [2] teacher in Defendant's Adult Education Division.[3] In 1981, Plaintiff was hired by Defendant as a part-time ECA,[4] in which position she worked at several Montgomery County high schools until 1993, except for a year of professional leave to teach in Poland during the 1991–92 school year. ECAs, under the supervision of the teachers they are assisting, perform some instructional work in English composition, including reading and correcting student compositions. (Defendant's Exhibit 1, 2).[5] In 1993, after a series of substandard performance reviews, Plaintiff was given the options of returning to her school in the fall as an ECA subject to a special three-month evaluation; accepting a demotion to ESOL Instructional Assistant; or resignation. ESOL Instructional Assistants assist ESOL teachers, primarily in curriculum-oriented instructional assistance directly to students. (Defendant's Exhibits 1, 4). On the advice of a union representative, she accepted the demotion. Plaintiff contends that the union representative "worked out this deal" with the administration and frightened her into accepting the demotion. She apparently was in the ESOL Instructional Assistant position at the time this action was filed.

Notwithstanding her professional setbacks, Plaintiff persisted in seeking promotion to full-time ESOL teacher. In 1988 she was advised that her application for an ESOL teaching position would not receive a favorable recommendation (Defendant's Exhibit 7) and later that year she filed an EEOC complaint alleging national origin discrimination.

(Defendant's Exhibit 8). The EEOC found no violation (Defendant's Exhibit 10) and Plaintiff pursued the matter no further. After she sought promotion again for the 1994–95 school year, which again was denied, she filed her second EEOC complaint, alleging national origin discrimination and retaliation for filing the first complaint. (Defendant's Exhibit 24). This claim was dismissed (Defendant's Exhibit 25) and she again pursued the complaint no further. Subsequent to more unfavorable evaluations and again being denied promotion, Plaintiff filed her third EEOC complaint claiming retaliation and age discrimination. (Defendant's Exhibits 40 and 41). Following dismissal of that complaint (Defendant's Exhibit 42) this action was filed.

It is uncontested that the application and hiring process for that position was governed by a detailed administrative regulatory scheme set for in Defendant's Exhibit 43. The regulation establishes various criteria and applicants are scored on those criteria. The scores then are combined and weighted to form a composite screening code or hiring code. The code is "reverse scored," meaning that the lower numbers indicate the better credentials. Moreover, under the scheme the applicants fall into three categories: highly competitive, competitive and not likely to be offered employment. (Defendant's Exhibit 1). In regard to her application for the 1995–96 school year, Plaintiff had the highest hiring (least qualified) code of the thirty applicants considered for ESOL teacher positions. Nineteen were-hired. Of those, seven were forty years of age or older and one of them was born before Plaintiff. (Defendant's Exhibit 1). Moreover, records of new hires of ESOL teachers for the 1994 fiscal year show eight of seventeen hires being older than forty, with the oldest being sixty-one years of age. For the 1995 fiscal year, records show eight of eighteen hires being for-

**2.** An acronym standing for "English for speakers of other languages."

**3.** Defendant asserts, and Plaintiff does not contest, that the Adult Education Division hires its own teachers independently of the process for hiring regular teachers in the system and virtually all of the Adult Education teachers are part-time, temporary employees.

**4.** This is another acronym standing for "English Composition Assistant."

**5.** This exhibit is an affidavit submitted by Richard Tyler of Defendant's Office of Personnel Services. None of the information extracted from it and included in this section of the opinion is contested by Plaintiff.

ty-four years of age or older and three of them fifty or older. (Defendant's Exhibit 1).

## III. Analysis

### A. The ADEA Claim

■■■ A defendant in a discrimination case can obtain summary judgment in either of two ways: the defendant "can demonstrate that the plaintiff's proffered evidence fails to establish a *prima facie* case, or, if it does, the defendant can present evidence that provides a legitimate nondiscriminatory explanation about which the plaintiff does not create a factual dispute." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). There are two ways, in turn, in which a plaintiff can establish a *prima facie* case, *i.e.*, through direct or circumstantial evidence. Direct evidence, in the context of employment discrimination, has been described as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d at 1137, 1142 (4th Cir.1995). Plaintiff has produced no such evidence in this case. Alternatively, a plaintiff may establish a *prima facie* case of employment discrimination through the well-known, burden-shifting scheme of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 847–48 (4th Cir.1988). A plaintiff may employ the same scheme of proof in an ADEA case. *See, O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Plaintiff must be able to prove that (1) plaintiff was protected by the ADEA; (2) plaintiff applied for the position in question; (3) plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). The burden then shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the discharge. *See St. Mary's Honor Center v. Hicks*, 509 U.S.

502, 506–7, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). If the defendant's proffered reasons are facially legitimate and nondiscriminatory, the presumption of unlawful discrimination falls away. *Id.* The burden then shifts to the plaintiff to prove that the employer's stated reasons are pretextual. *Carter*, 33 F.3d at 459 (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir.1989)).

■■■ It is uncontested that Plaintiff was protected by the ADEA and applied for promotion. Unfortunately, Plaintiff cannot carry her burden of establishing that she was qualified for the position. The record is replete with documentary evidence of substandard evaluations and admonitions from supervisors regarding Plaintiff's work in positions substantially less demanding than that which she was seeking. (Defendant's Exhibits 5, 6, 7, 13, 14, 15, 16, 17, 18, 19, 20). While Plaintiff claims that Defendant did not give proper weight to more favorable evaluations and seeks in her opposition to discount the unfavorable evaluations as personally based ("The person who interviewed me disliked me ...."; "I was accepted very coldly ...."; "Dr. Traubitz began to show her dislike for me ... "), the adverse criticism of her work is pervasive and specific. Moreover, the hiring statistics, which show substantial numbers of hires within close proximity to Plaintiff's age, clearly give lie to any claim of age discrimination. The only inference which can be garnered from those hiring statistics, in fact, is that Defendant *did not* discriminate based upon age. In short, Plaintiff's case fails in regard to the third and fourth prongs of the scheme for proving her *prima facie* case of age discrimination.

### B. Retaliation

■■■ Once again, Plaintiff can offer no direct evidence of retaliation by her employer and must rely upon the *McDonnell Douglas* paradigm. Plaintiff must prove three elements in order to establish a *prima facie* case of retaliation under Title VII:(1)the employee engaged in activity that is protected; (2) the employee was the recipient of adverse employment action by the employer; and (3) there was a causal connection between the adverse action and the protected activity.

*Hopkins v. Baltimore Gas & Electric Co.,* 77 F.3d 745, 754 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996) (citing *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991)). Assuming, without deciding, that Plaintiff has established a *prima facie* case of retaliation under this formula, Defendant has shown ample, legitimate reason for the promotion decisions which were made and Plaintiff offers nothing to establish that the reasons for not promoting her were mere pretext.

In *Featherson v. Montgomery County Public Schools,* 739 F.Supp. 1021 (D.Md. 1990), Judge Motz had occasion to review a similar selection process employed by Defendant, including an objective scoring system like that employed in the selection of the ESOL teachers, and noted Defendant's "impressive showing of the purity of their established procedures." *Id.* at 1027. Moreover, the unfavorable evaluations of Plaintiff cover periods both before and after her EEOC complaints (Defendant's Exhibits 5, 6, 7, 13, 14, 15, 16, 17, 18, 19, 20) and primary criticisms of Plaintiff, *i.e.* lateness with or inability to complete work and trouble interacting with students, span more than a decade. Her response to evaluation has not been forthcoming. "I will not challenge the teachers' opinions on the evaluation forms: they are entitled to them as I am entitled to mine." (Defendant's Exhibit 21). Plaintiff also holds tightly to her contention that as an instructional assistant she had no responsibility for student discipline despite the job description which clearly states that the duties include: "Helps maintain order and discipline and assists in managing the behavior of students; including crisis intervention." (Defendant's Exhibit 4). Defendant clearly has carried its burden of establishing the legitimacy of its selection process and Plaintiff has mounted no showing of pretext.

### IV. Conclusion

Plaintiff having failed to establish a *prima facie* case of age discrimination and Defendant having established an unchallenged, legitimate basis for its employment action thereby refuting Plaintiff's claim of retaliation, an order will be entered separately awarding summary judgment in favor of Defendant.