Gene REVIS

v.

DYNCORP TECHNICAL
SERVICES, INC.

No. CIV.A.DKC 2001–4145.

United States District Court,
D. Maryland.

Oct. 28, 2003.

Joe C. Ashworth, Law Office of Joe C. Ashworth, Leonardtown, MD, for Plaintiff.

Steven W. Ray, Ray and Isler PC, Vienna, VA, Bruce D. Burkley, Law Offices of Bruce D. Burkley, Great Falls, VA, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution is the unopposed motion of DynCorp Technical Services, Inc. for summary judgment. For the following reasons, the motion will be granted.

### I. Procedural Background

Plaintiff, Gene Revis, filed this employment discrimination action on December 27, 2001. The complaint alleges that he, a white male, was employed by DynCorp from November 25, 1985 until September 20, 2000, in a variety of positions, including as a supervisor, and that he always performed his responsibilities in an "above average manner." In February 2000 he was informed that he was being demoted because of alleged inappropriate conduct toward a subordinate female employee. He protested, and contended that he was being discriminated against based on race and sex. His grievance through internal procedure was ignored. The demotion caused severe emotional distress and in March 2000, he was placed on medical and family leave. During the leave, he complied with obligations under the Family and Medical Leave Act (FMLA) and continued to complain about unlawful treatment. On September 18, 2000, he returned to work and worked as scheduled on September 19 and 20. On September 20, 2000, Plaintiff was informed that he was being terminated because he abandoned his position because he had not been seen by a physician between May and September 2000.

The three count complaint contends that the termination violated (1) § 704 of the Civil Rights Act of 1964 (retaliation); (2) § 703 of the Civil Rights Act of 1964 (unlawful discrimination); and (3) § 105 of the FMLA. A default was entered on August 2, 2002, but vacated based on a consent motion on September 9, 2002. The parties then engaged in discovery. After the scheduling order was amended upon joint request, Defendant filed its motion for summary judgment on July 2, 2003. Plaintiff was granted an extension of time to file his opposition, but none has been filed. On September 26, 2003, Defendant filed a paper entitled "Defendant's Response to Plaintiff's Failure to Oppose Defendant's Motion for Summary Judgment." Still, no response has been received from Plaintiff.

### II. Standard of Review

Even though the motion is unopposed, the court will review the record to deter-

mine whether summary judgment is warranted:

> When a motion for summary judgment is made as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v.*

*Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984), *quoting Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Factual Background

The following facts are either uncontroverted or taken in the light most favorable to Plaintiff. As mentioned above, Plaintiff was employed by DynCorp from November 1985 through September 2000 and held a supervisory position since December 1995. On February 23, 1999, DynCorp hired Ms. Kelly Reese, a white female, as a computer operator. Ms. Reese did not report directly to Plaintiff, but the two met when Ms. Reese began working night shifts. Thereafter, they became engaged in activities outside of work. On January 19, 2000, Ms. Reese contacted her supervisor, Herb Moore, by telephone and reported that Plaintiff had harassed her based on her sex by, among other things, indicating that he wanted to be more than friends with her. An investigation into Ms. Reese's complaints was commenced immediately and Ms. Reese submitted a written statement describing her complaints. In her statement, Ms. Reese claimed that, on numerous occasions, Plaintiff showed up unannounced at her home, followed her out of the base when leaving work, tried to give her a massage and frequently gave her small gifts. Ms. Reese also claimed that Plaintiff was angered when told that she only wanted a professional relationship and, because of his conduct, Ms. Reese found it necessary to avoid Plaintiff.

On January 21, 2000, Plaintiff was informed of the sexual harassment charges and told to report to the day shift until investigation was completed. Upon request, Plaintiff wrote a statement that same night regarding his relationship with Ms. Reese. After a thorough investigation, including interviews and written statements of Plaintiff, Ms. Reese and other DynCorp employees, it was determined that Plaintiff had violated DynCorp's policy prohibiting sexual harassment.

DynCorp maintains policies prohibiting unlawful discrimination in the workplace and sexual harassment. Plaintiff was familiar with DynCorp's policy prohibiting sexual harassment and received both training on sexual harassment and material containing the DynCorp's equal opportunity and sexual harassment policy. On January 28, 2000, Plaintiff was informed that he was being demoted because he created a hostile work environment for Ms. Reese in violation of the Company's Ethics and EEO policies. On the following Monday, Plaintiff began working in his new position. Approximately seven weeks after his demotion, Plaintiff began a medical leave of absence due to alleged stress and anxiety, purportedly as a result of his demotion. His leave was covered both by DynCorp's Medical Leave Policy and the FMLA Policy. Plaintiff was seen by a nurse practitioner and a licensed clinical social worker at various times during his leave until May 16, 2000. Plaintiff did not see either medical practitioner again until September 14, 2000, at which time he sought a certificate supporting his medical leave through that date and authorizing him to return to work. Because Plaintiff had stopped taking his medication, had stopped counseling and had not been seen for a follow-up visit since May 16, his medical leave was authorized only through June 15, 2000. Nearly six months after first requesting and receiving a medical leave of absence and three months after the twelve-week FMLA leave period had expired, Plaintiff indicated to DynCorp that he was ready to return to work. As Plaintiff was unable to get adequate authorization to be off work from June 15 through September 15, he was informed that he was considered to have abandoned his position on June 15th when he failed to return to work on that date. Accordingly,

Plaintiff was terminated effective September 21, 2000.

## IV. Analysis

### A. Count I: Retaliation

██ In order to establish a *prima facie* case of retaliation, a plaintiff must show (1) that he engaged in protected activity; (2) that the employer took an adverse employment action against the employee; and (3) that a causal connection existed between the protected activity and the adverse action. *See Munday v. Waste Management of North Am., Inc.*, 126 F.3d 239, 242 (4th Cir.1997). Once the *prima facie* case is established, the defendant must rebut it with legitimate non-retaliatory reasons for the adverse action. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989). After the defendant rebuts the *prima facie* case, the burden of proof lies with the plaintiff to establish by a preponderance of the evidence that the proffered reasons are pretextual. *Id.*

Defendant contends that Plaintiff's retaliation claim fails for the simple reason that he did not engage in any protected activity, but also because he has no evidence of any causal connection between his alleged activity and his termination six months later. Finally, Defendant asserts that Plaintiff cannot prove pretext, even if the court were to reach that stage of analysis.

██ Plaintiff has failed to adduce any evidence that he engaged in any protected activity. At most, Plaintiff communicated a belief that DynCorp did not conduct its investigation according to company policies by making a passing comment and submitting an unsigned letter to Bud Boyce, the site manager of the facility where Plaintiff worked. *See* paper 28, ex. 1, at 225–29, 234–35. In doing so, Plaintiff claims only that he was treated unfairly. *See* paper 28, ex. 1 at 234–35. Plaintiff himself admits that he did not tell anyone at DynCorp that he believed that he was being discriminated against on account of his race or sex. *See id.* at 272–73. Moreover, Plaintiff has not established a causal connection between his purported protected activity and the adverse action. Plaintiff has merely surmised a belief that DynCorp terminated his employment because they did not want to deal with him after all that had occurred. *See id.* at 272. The evidence provided is simply insufficient to establish that Plaintiff engaged in any protected activity or that there exists a causal connection between such activity and the adverse action. Nor has Plaintiff provided any evidence establishing that the proffered reasons for his demotion or termination are pretextual.

### B. Count II: Discrimination

██ In order to prevail on a claim of discrimination under Title VII, a plaintiff must demonstrate that the defendant acted with discriminatory intent. *See Karpel v. Inova Health System Services*, 134 F.3d 1222, 1227 (4th Cir.1998). The plaintiff may prove discriminatory intent either through direct evidence of discriminatory animus or through indirect evidence using the three-pronged burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* at 1227–28. Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir.2002). If a plaintiff establishes a *prima facie* case of discrimination through circumstantial evidence, the burden of production then shifts to the defendant to provide a legitimate, non-discriminatory reason for the differential treatment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530

U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff must then " 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097, *citing Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

Plaintiff has no direct evidence of discriminatory intent. Rather, Plaintiff has admitted that he never told anyone at DynCorp that he believed he was terminated because of his race or sex and that no one at DynCorp ever said that he was terminated because of his race or sex. *See* paper 28, ex. 1, at 272–73, 280–81. Nor, as argued by Defendant, can Plaintiff establish the discrimination claim through the indirect, circumstantial evidence route. Plaintiff has provided no evidence that employees outside his protected class engaged in misconduct as serious as that for which he was disciplined. Instead, Plaintiff's testimony references only one other instance at DynCorp involving harassment charges of an employee. This instance does not, as Plaintiff concedes, involve a sexual harassment, but rather only general harassment charges with dissimilar facts and allegations. *See id.* at 232–234. In fact, the record demonstrates that the situation to which Plaintiff refers was not of similar misconduct or comparable in seriousness. *See id.,* ex. 33, at ¶ 3. Thus, Plaintiff has failed to adduce any evidence of an employee outside his protected class who violated DynCorp's sexual harassment policy in a similar manner and who received lesser discipline as is necessary to establish a *prima facie* case of discrimination.

### C. Count III: FMLA

Plaintiff mistakenly believed that his right under the FMLA was to twelve months of leave, rather than the twelve weeks provided in the law. *See* paper 28, ex. 1 at 281.

■ Out of an abundance of caution, Defendant addresses the possibility that Plaintiff intends to bring a retaliation claim under the FMLA. For the same reasons stated above, he cannot substantiate such a claim. There is no evidence of a causal connection between his taking of proper FMLA leave (the first twelve weeks) and his termination. Rather, the uncontroverted evidence shows that Plaintiff's termination was due to his failure to return to work at the end of that leave.

### V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted by separate order.