**Eric J. ROLLISON, Plaintiff,**

v.

**GWINNETT COUNTY, Wayne C. Bolden, as an officer of Gwinnett County Division of Police Services, and Carl White, as an officer of the Gwinnett County Division of Police Services, Defendants.**

**Civ. A. No. 1:92–CV–3099–FMH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 8, 1994.

Patricia Bennett Ball, Norcross, GA, for plaintiff.

William J. Linkous, III, Lawrenceville, GA, for defendants.

## ORDER

HULL, District Judge.

This action is before the Court on the Defendants' Motion for Summary Judgment [29–1].

## I. BACKGROUND

Plaintiff Eric J. Rollison is a former Gwinnett County policeman. The Defendants are (1) Wayne C. Bolden, in his official capacity as Chief of Police for Gwinnett County, (2) Carl White, in his official capacity as Assistant Chief of Police for Gwinnett County, and (3) Gwinnett County.[1]

The Plaintiff alleges that the Defendants unlawfully forced his resignation, in violation of the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, and his procedural due process rights under the Fifth and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983.

On June 14, 1994, the Court held a hearing on the Defendants' Motion for Summary Judgment [29–1].

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c), Fed.R.Civ.P., defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). "[U]nless the movant for summary judgment meets its burden under Rule 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion." *Id.*

While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth,*

*Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court interpreted Rule 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

In either situation, only when the movant meets this burden, does the burden shift to the opposing party, who must then present evidence to establish the existence of a material issue of fact. *Id.* After the movant successfully discharges its burden, the nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, to demonstrate that a genuine issue of material fact does exist. *Id.*

## III. FACTS

Based on the record, and viewing all evidence and factual inferences in a light most

---

1. The Plaintiff's original suit included a prayer for relief from Defendants Bolden and White in their individual capacities. Both Defendants Bolden and White were dismissed, in their individual capacities, by Order of the Court [44–1].

favorable to the non-moving party, the following facts emerge.

The Plaintiff Eric J. Rollison was employed with the Gwinnett County Bureau of Police Services ("Gwinnett Police") from approximately 1984 until June 29, 1992. After working for one year in the uniform division, the Plaintiff was transferred to the narcotics and vice/alcohol enforcement unit, to work undercover. As an undercover narcotics agent, the Plaintiff investigated and arrested drug suspects. Many of the drug purchases were arranged in bars, and, the Plaintiff often had to drink alcohol to maintain his undercover identity. At some point, during his tenure as an undercover agent with the vice/alcohol squad, the Plaintiff began to be involved in altercations both at home and out in public.

The first incident was in 1987, when the Plaintiff was involved in a fight at a Marriot Hotel. The Plaintiff received a reprimand from his supervisor, because of the fight.

On October 9, 1989, the Plaintiff was involved in a domestic dispute with his wife. When uniformed officers responded to the Plaintiff's house, they discovered that Plaintiff had been drinking, while working undercover, earlier that day. There is some dispute over how much alcohol the Plaintiff had consumed, but the officers on the scene determined that the Plaintiff was intoxicated enough to be denied the use of his vehicle. The Plaintiff blamed the altercation on stress, marital difficulties, and his mother's illness. As a result of the October 9, 1989 incident, the Plaintiff was transferred out of vice/alcohol and back into the Uniform Division. The transfer was not disciplinary in nature, but done because the Plaintiff's undercover work aggravated his home life. Despite the transfer, the Plaintiff and his wife were divorced in 1989.

On December 21, 1990, police and fire units were called to Poor Richard's Pub in Gwinnett County. When the police arrived, they found that the Plaintiff was intoxicated and had started a fight at the bar. As a result of the fight, there were several injuries and extensive property damage. The Plaintiff was suspended from duty, without pay, for three days.

The Plaintiff was also involved in at least two other altercations with his wife, but no criminal charges were filed. On one occasion the Plaintiff kicked in the door of his wife's house and on the other the Plaintiff pulled his wife's phone from the wall. Both of these incidents occurred after the Plaintiff had been drinking.

On February 13, 1992, a van, driven by the Plaintiff, struck two other vehicles and then immediately left the scene. There was no evidence that the Plaintiff was under the influence of alcohol at the time of the accident. The Plaintiff was charged with a violation of O.C.G.A. 40–6–270(c)(1), entitled "Failure to Stop, Render Aid, and Leave Information." The charges were eventually reduced to an unsafe lane change. As a result of the February 13, 1992 traffic accident, the Plaintiff was suspended from duty without pay for six days and demoted from Police Officer III to a Police Officer II. The Plaintiff appealed the disciplinary actions taken against him to the Gwinnett County Merit System Board, but the Board upheld the suspension and demotion.

On June 25, 1992, the Plaintiff was involved in another altercation with his former wife. The Plaintiff had been drinking prior to the fight and when his wife left to call the police, the Plaintiff went inside the house to lie down. When the Gwinnett police arrived, the Plaintiff refused to come outside and "cussed out" the officers. The officers left shortly thereafter, as did the Plaintiff's wife. The Plaintiff then went to his station house where he asked for a breathalyzer test. The intoximeter results showed a blood alcohol level of .08 grams percent.

Defendants Bolden and White were aware that the Plaintiff had been involved in many of these incidents and that the Plaintiff had consumed alcohol prior to some of these incidents. Defendants Bolden and White state that they were not aware, however, that the Plaintiff was an alcoholic. The Plaintiff alleges that he told the Defendants that he was an alcoholic on the day he was discharged.

The Plaintiff received counseling from Dr. Mark C. Polkosnik, but Dr. Polkosnik did not diagnose the Plaintiff as an alcoholic. Dr.

Polkosnik did inquire about alcohol, but his concern was that the Plaintiff was suffering from depression, and the alcohol might aggravate his depression, not that the Plaintiff was specifically an alcoholic.

In response, the Plaintiff contends that, on the day he was constructively discharged, he told the Defendants he was an alcoholic and wanted counseling. In addition, the Plaintiff points out that alcohol was repeatedly involved in the off-duty conduct incidents.

The Court finds that a genuine issue of material fact exists as to (1) whether the Plaintiff was an alcoholic, and (2) whether the Defendants were on notice, either actual or constructive, of the Plaintiff's alcoholism. While the Plaintiff was not diagnosed by a doctor as an alcoholic until September 1992, the Court, for purposes of the pending motion for summary judgment, must take the evidence and accompanying inferences most favorable to the Plaintiff and assume that he was an alcoholic and that the Defendants were on notice of the Plaintiff's alcoholism.

On June 29, 1992, the Plaintiff met with Defendants Bolden and White. The events of the meeting are disputed. The Defendants contend that Defendant Bolden told the Plaintiff that he was going to recommend the termination of the Plaintiff, due to off-duty conduct. Specifically, that the Plaintiff's off-duty conduct reflected poorly upon the Plaintiff as a citizen and as a police officer, and poorly upon the Gwinnett County Police Department, due to the Plaintiff's employment.

The Plaintiff's version of the meeting is very different. The Plaintiff contends that his first statement was to inform the Defendants that he was an alcoholic, and that he wanted counseling. According to the Plaintiff, Defendant Bolden refused to provide the Plaintiff with any counseling, telling him that it was too late and that the Plaintiff could either resign or be fired. The Plaintiff alleges that Defendants Bolden and White suggested that by choosing to resign, rather than being fired, the Plaintiff would be able to preserve his P.O.S.T. certification.[2] Ac-

cording to the Plaintiff, the Defendants told the Plaintiff that if they were forced to fire him, then they would have to report his termination to the P.O.S.T. council, and he would probably lose his certification.

At the end of the meeting, the Plaintiff and Defendant White left the room together and went to Defendant White's office. Once in Defendant White's office, the Plaintiff alleges that Defendant White told the Plaintiff to "take a memo pad and fill it out and resign." The Plaintiff further alleges that Defendant White told the Plaintiff to write that "effective today, you resign your position as a Gwinnett County police officer" and then sign it. The Plaintiff's resignation letter, dated June 29, 1992, reads: "I respectfully resign my position as a Gwinnett County Police Officer effective 06 29 92. E.J. Rollison."

A few days after the June 29th meeting, the Plaintiff states that he spoke with Steve Ledford, a Gwinnett County Merit Board representative and was told that the Plaintiff could only appeal if he was fired, and since the Plaintiff resigned, an appeal was not available.

Gwinnett County's policy regarding the termination of police officers permitted the Chief of Police, Defendant Bolden, to recommend the firing of an officer; however, Defendant Bolden did not have final termination authority. Only the Director of the Gwinnett County Bureau of Police Services, Steve Shildecker, had final termination authority. Any employee who was terminated, or had any other disciplinary action taken against them, had the right to appeal the termination to the Gwinnett County Merit System Board. As of the June 29, 1992 meeting, the Plaintiff had not been given any pre-termination notice and Defendant Bolden had not recommended the Plaintiff's termination to Director Shildecker.

The Plaintiff alleges that the choice he was offered, either termination and risk the loss of his P.O.S.T. certification, or voluntary resignation, amounted to a constructive dis-

---

**2.** The P.O.S.T. certification is the Peace Officer Standards and Training certification, which all police officers must have to be employed. Under

Georgia law, notice of any disciplinary action taken against a certified peace officer must be given to the P.O.S.T. council.

charge. The Plaintiff contends that he was forced to resign. Based upon the constructive termination, the Plaintiff claims that his rights were violated under the Rehabilitation Act, the Americans with Disabilities Act, and that he was deprived of his property interest in his right to appeal to the Gwinnett County System Board.

The Defendants have moved for summary judgment on all of the Plaintiff's Claims.

### IV. Timeliness of the Plaintiff's Response

The Defendants argue that the Plaintiff's response to the Defendants' Motion for Summary Judgment was filed four days past the date it was due. [46–1]. Based upon the untimeliness of the Plaintiff's response, the Defendants request that their Motion for Summary Judgment be granted as unopposed. The Court recognizes the technical violation of the Plaintiff, but has decided, in its discretion, to consider the Plaintiff's Response and proceed to rule on the merits.

### V. Punitive Damages

■■■ In his Complaint [1–1], the Plaintiff seeks punitive damages against the Defendants, for their violations of rights secured under 42 U.S.C. § 1983. See Complaint [1–1], Prayer for Relief (f). Municipalities cannot be liable for punitive damages under 42 U.S.C. § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Additionally, a suit against a governmental agent in his official capacity, where the governmental entity is also named, is to be treated as a suit solely against the government entity. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir.1991). Since the Defendants Bolden and White have been dismissed in their individual capacities and remain only in their official capacities, the Plaintiff is unable to recover punitive damages against the Defendants. The Defendants' Motion for Summary Judgment on the issue of punitive damages is **GRANTED.**

### VI. Constructive Termination

■■■ The threshold question is whether the events surrounding the Plaintiff's meeting with Defendants Bolden and White constitut-ed a valid resignation or a constructive discharge. Unless the Plaintiff was discharged, there is no pleaded cause of action on which the Plaintiff can prevail.

" 'The law in this circuit with respect to constructive discharge is well-established. To show constructive discharge, the employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign.' " Hill v. Winn–Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir.1991) (quoting Wardwell v. School Bd. of Palm Beach County, Florida, 786 F.2d 1554, 1557 (11th Cir. 1986)); see also, Lewis v. Federal Prison Industries, Inc., 786 F.2d 1537, 1542–43 n. 4 (11th Cir.1986). "The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer ... is liable ... as if it had formally discharged the aggrieved employee." Id. The fact-finder must determine whether the conditions surrounding the Plaintiff's resignation were such that a "reasonable person would have felt compelled to resign." See Hill, 934 F.2d at 1527.

What occurred at the June 29, 1992 meeting between the Plaintiff and Defendants Bolden and White is in dispute. Taking the version most favorable to the Plaintiff, the Plaintiff was given a choice between having Defendant Bolden recommend his formal termination or voluntarily resigning. The Plaintiff alleges that his resignation was involuntary because of his fear over the loss of his P.O.S.T. certification and the Defendants' actions encouraging his resignation. In support of his claims, the Plaintiff emphasizes Defendant Bolden's refusal to consider counseling instead of formal termination and Defendant White's dictation of the Plaintiff's resignation letter.

The Court finds that a genuine issue of material fact is presented regarding whether the Plaintiff voluntarily resigned or was constructively discharged. Therefore, for the purposes of the Defendants' Motion for Summary Judgment, the Court will assume arguendo that the Plaintiff was terminated from his employment and proceed to deter-

mine whether the Plaintiff's discharge violated federal law.

## VII.  *Rehabilitation Act of 1973*

█ The Plaintiff seeks recovery under Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 794(a), which provides that no individual with a disability shall be discharged "solely by reason of her or his disability," as follows:

> No otherwise qualified individual with a disability in the United States ..., shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial aid ...

29 U.S.C. § 794(a).[3]

For purposes of the Defendant's Motion, the Court assumes, that alcoholism satisfies the definition of a "disability," under the Rehabilitation Act. The critical issue is whether the Defendants constructively discharged the Plaintiff, *"solely by reason of her or his disability."*

Defendant Gwinnett County followed a program of progressive discipline with the Plaintiff, due to his off-duty conduct. The Plaintiff was first reprimanded; then he was suspended for three days without pay; then he was suspended for six days, without pay and demoted from Police Officer III to Police Officer II. Finally, after the June 25, 1992 incident, which again required official police response, Defendant Bolden was ready to recommend the Plaintiff's termination. The Defendants contend that the Plaintiff voluntarily resigned on June 29, 1992, to avoid termination and the loss of his P.O.S.T. certification. However, if the Plaintiff's version of events is believed and the Defendants' conduct is treated as a constructive discharge, the Defendants have offered legitimate, non-discriminatory reasons for the Plaintiff's termination—namely, the Plaintiff's repeated off-duty incidents.

The Rehabilitation Act prohibits discrimination solely on the basis of an individual's handicap. In this case, the Plaintiff was not discharged because he was an alcoholic, but rather he was discharged because of his repeated off-duty conduct. Requiring a police officer to abide by the law, both on and off-duty, is not discrimination solely on the basis of a handicap and the there is no cause of action, under the Rehabilitation Act, for the Plaintiff to pursue. The mere fact that the Plaintiff may be an alcoholic does not provide him with added statutory protections, provided that he was discharged for the illegal off-duty conduct itself, and not his alcoholism. The Court finds that the Plaintiff was discharged because of his off-duty conduct and not because of his alcoholism.

When faced with similar allegations, other courts have reached the same conclusion. In *Huff v. Israel,* 573 F.Supp. 107 (M.D.Ga. 1983), the plaintiff was the compliance officer for the city and was discharged for three D.U.I. convictions. The plaintiff argued that being discharged for behavior which resulted from his alcoholism is the same as being discharged for his alcoholism. The district court found that such an argument was "patently without merit." The court stated that the "plaintiff would be unable to function effectively in his position as Compliance Officer ... when he, himself, could not comply with the law, as evidenced by his three convictions for DUI." *Huff,* 573 F.Supp. at 110.

Likewise, in *Richardson v. United States Postal Service,* 613 F.Supp. 1213 (D.C.D.C. 1985), the trial court granted summary judgment to the defendant, where the plaintiff was discharged for threatening to kill his wife. Richardson argued that his behavior was caused by his alcoholism, and thus the discharge was due to his alcoholism. The court found that the Rehabilitation Act "does not prohibit an employer from discharging an employee for improper off-duty conduct when the reason for the discharge is the conduct itself, and not any handicap to which the conduct might be related". *Id.* at 1215–16.

Based upon a review of the whole record, the Court finds that the Plaintiff's off-duty conduct was the reason for the Plaintiff's alleged discharge. Since the Defendants did

---

**3.** The fact that the Defendant Gwinnett County received federal financial aid, such as to qualify as a "program or activity receiving Federal financial aid," is not at issue.

not discharge the Plaintiff solely on the basis of his alcoholism, the Plaintiff has no cause of action under the Rehabilitation Act. Therefore, the Defendants' Motion for Summary Judgment on the Plaintiff's claim under the Rehabilitation Act is **GRANTED.**

## VIII. *Americans with Disabilities Act Claim*

■ The Plaintiff alleges that the Defendants' actions violated his rights under the Americans with Disabilities Act (ADA). The Plaintiff claims that alcoholism is his disability and that he was fired due to his disability, or alternatively, that the Defendants failed to provide reasonable accommodation for his alcoholism/disability. Assuming *arguendo* that the Plaintiff's resignation amounted to a constructive discharge, then the Plaintiff must show a *prima facie* case of discrimination under the ADA. Section 12112(a) of the ADA provides that employees shall not discriminate against an "individual with a disability because of the disability," as follows:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Section 12112(b) defines discrimination under Section 12112(a) as, among other things, denying employment opportunities to an "employee ... with a disability, if such denial is based on the need of [the employer] to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. 12112(b)(5)(B).

Section 12114 specifically addresses the use of drugs and alcohol, by the employee, and narrows the ADA protection for employees using illegal drugs and alcohol. Subpart (c)(4) of Section 12114 provides that an employer may hold an alcoholic employee to the same standards for employment or job performance, as it holds other employees, even if the unsatisfactory performance is related to the alcoholism, as follows:

a covered entity—may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee.

42 U.S.C. § 12114(c)(4). The Plaintiff contends that he was an alcoholic, and as such, is a "qualified individual" under Section 12112(a), and that the Defendants were on notice of his alcoholism. The Plaintiff further alleges that the Defendants refused to accommodate his alcoholism and discharged him due to his alcoholism.

■ The ADA expressly permits the employer to hold an employee to the same standard as all other employees, even if "any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." *See* Section 42 U.S.C. 12114(c)(4). Here the occurrence of the off-duty incidents are not in dispute. While alcohol may have caused the off-duty problems, the ADA expressly provides that an employer may hold an employee to the same standards for employment or job performance as all other employees, even if the unsatisfactory performance is related to the alcoholism of the employee. The facts of this case fall squarely within the ADA's treatment of alcoholic employees who do not perform up to the standards required by their employer. Under the ADA the employer is allowed to terminate and not accommodate an alcoholic employee, *if* the employee does not perform up to the same standard as all other employees, even if the behavior is related to the employee's alcoholism.

Although the Plaintiff's on-job performance was deemed "average to good and sometimes going to excellent," it was the Plaintiff's off-duty behavior and repeated involvement in fights, domestic altercations, plus the traffic violation, all of which required police response, that led to his termination. There is no evidence that the Plaintiff was discharged because of his alcoholism, rather, if he was discharged, it was because of his off-duty behavior, which did not meet the

standards of behavior that Gwinnett County required from its police officers. Therefore the Court **GRANTS** the Defendants Motion for Summary Judgment on the Plaintiff's claim for recovery under the American with Disabilities Act.

## IX. *Procedural Due Process Claim* [4]

■ The Plaintiff also alleges that he was deprived of his property rights, without due process, based upon the Fifth and Fourteenth Amendments to the United States Constitution.

The Plaintiff alleges that since his resignation was actually a constructive discharge, he was deprived of his right to pursue an appeal before the Gwinnett County Merit System Board. To vindicate this alleged deprivation of a property right the Plaintiff has pleaded, pursuant to 42 U.S.C. § 1983, a violation of his procedural due process rights under the Fifth and Fourteenth Amendments of the United States Constitution.

■ The Court first notes that the Defendants Bolden and White remain in this case only in their official capacity. Thus, any liability which exists, is borne solely by Defendant Gwinnett County. *See Hafer v. Melo,* 502 U.S. 21, 23, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991).

■ A municipality may be sued under 42 U.S.C. § 1983, provided that the alleged wrong stemmed from an official policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). "A municipality cannot be held liable *solely* because it employs a tortfeasor," rather "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 691–94, 98 S.Ct. at 2036–38. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Thus, municipal liability under Section 1983 is not based solely upon the employee-employer relationship, but rather upon an inquiry into whether the governmental entity is responsible for the alleged constitutional violation itself. *Pembaur,* 475 U.S. at 479, 106 S.Ct. at 1298. The single act of a municipal official may subject the municipality to liability under Section 1983, for:

1. acts which the municipality officially sanctioned or ordered;

2. acts of municipal officials with final policy-making authority as defined by state law;

3. actions taken pursuant to a policy adopted by the official or officials responsible, under state law, for making policy in that area.

*Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633 (11th Cir.1991) (citing *Pembaur,* 475 U.S. at 480–83 n. 12, 106 S.Ct. at 1298–1300 n. 12).

■ In order to subject a municipality to Section 1983 liability based solely upon the acts of a municipal employee, that employee must possess "final authority to establish municipal policy with respect to the action

---

4. The Plaintiff's Brief on the Issue of "custom or usage" refers to a common law Fourteenth Amendment Procedural Due Process claim. [58–1]. However, the Plaintiff did not plead such an action in his Complaint [1–1], or show the existence of one in fact or under the law. The cases cited by the Plaintiff were all brought pursuant to 42 U.S.C. § 1983.

The Court also notes, and both parties acknowledge, that the Plaintiff, as a public employee, can only bring a due process claim alleging deprivation of procedural due process, and not a substantive due process claim. *See McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994).

ordered," such that the act may be said to "represent[ ] an act of official government 'policy.'" *Pembaur,* 475 U.S. at 481, 106 S.Ct. at 1299; *Wetzel v. Hoffman,* 928 F.2d 376, 377 (11th Cir.1991). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur,* 475 U.S. at 481–82, 106 S.Ct. at 1299. Rather, the subject official must also be "responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 483, 106 S.Ct. at 1300.

In this case, the alleged unconstitutional municipal action was Defendant Bolden forcing the Plaintiff to resign and thereby depriving the Plaintiff of his property interest in employment without procedural due process.[5] The Plaintiff contends that the constructive discharge deprived the Plaintiff of his right to appeal his termination to the Gwinnett County Merit System Board.[6] Therefore, Defendant Bolden either (1) must have caused the Plaintiff's constructive discharge pursuant to an official policy or custom concerning the termination of employees, or (2) Defendant Bolden must be an official with final authority to establish municipal policy on employee termination.

The Court finds that Defendant Bolden was not an official with final authority to establish municipal policy regarding the termination of employees. The determination of whether a particular official has final policymaking authority, is governed by state law, including valid local ordinances and regulations. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 125, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988); *Martinez v. City of Opa–Locka,*

*Fla.,* 971 F.2d 708, 713 (11th Cir.1992); *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 997 (11th Cir.1990). A "federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Martinez v. City of Opa–locka, Fla.,* 971 F.2d 708, 714 (11th Cir.1992) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988)).

The record reflects that Defendant Bolden could only recommend the termination of an employee, and did not have final authority to terminate a Gwinnett County Police Officer. Instead, Director Shildecker had the final authority to terminate a Gwinnett County Police Officer. *See* Defendant Motion for Summary Judgment, Exhibit G [29–1].

Plaintiff contends that Defendant Bolden did possess final policy-making authority by citing to Defendant Bolden's deposition, (Plaintiff's Response to issue of "custom or usage," [58–1] at 8–9), as follows:

Q. As the chief of police, either under Director Shildecker or now, has it been your responsibility to establish the policies and procedures relating to your employees in the police department?

A. Yes.

(Defendant Bolden's Deposition at 10). However, the question is not whether Defendant Bolden established some policy for Gwinnett County employees, but rather was Defendant Bolden responsible for establishing final government policy on terminations? Defendant Bolden explains that he does not possess such authority, just two pages later, when he states:

Gwinnett County Merit System representative and was told that the Plaintiff could only appeal a termination and because the Plaintiff resigned he could not appeal. *See* Plaintiff's deposition at 127. Since the Plaintiff contends that he did not resign voluntarily, but was discharged, the Plaintiff could have appealed that discharge. However, for purposes of this summary judgment analysis, the Court will assume, *arguendo,* that the constructive discharge discouraged the Plaintiff from appealing and thus, deprived the Plaintiff of his right to appeal.

---

5. Georgia is an employment at will state. In this case, the Plaintiff was a classified employee who, as part of the Gwinnett County Merit System Rules, has the right to appeal to the Gwinnett County Merit System Rules certain employment matters, including wrongful discharge or termination. *See* Affidavit J. Winford Gower [61–1], and Exhibit A–D.

6. There is no evidence that the Plaintiff appealed, tried to appeal his constructive discharge, or was denied his right to appeal. The Plaintiff reports that he inquired about his right to appeal to his

Q: Do you have the unilateral discretion to terminate employees?

A: I have the discretion to recommend termination.

Q: And what does that mean, recommend to whom?

A: It meant, when Steve Shildecker was here, that my recommendation went directly to him. Now that he's gone, it goes to the county administrator, Bill Nordquist.

(Defendant Bolden's Deposition at 12–13; Affidavit of Defendant C. Wayne Bolden at para. 21). The record is unequivocal that Defendant Bolden was not a Gwinnett County official with final policy-making authority over the termination of Gwinnett County Police Officers. Similarly, Defendant White, in his role as Assistant Chief of Police, was not a Gwinnett County official with final policy-making authority over the termination of Gwinnett County Police Officers.

Alternatively, the Plaintiff alleges that the actions of Defendant Bolden were taken pursuant to an established Gwinnett County policy, of forcing employees to resign or be terminated. In order to hold a municipality liable under Section 1983, the "challenged action [of the employee] must have been taken pursuant to a policy adopted by the official or officials responsible for making policy in that particular area ..., as determined by state law." *Martinez v. City of Opa–Locka, Fla.,* 971 F.2d 708, 713 (11th Cir.1992); *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 997 (11th Cir.1990) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 125, 108 S.Ct. 915, 924, 925, 99 L.Ed.2d 107 (1988)). There is no such written Gwinnett County policy or rule which forces employees to resign or be terminated.

In support of his contention, the Plaintiff argues that the Defendant Gwinnett County admitted the existence of such a policy in the Defendants' Responses to Plaintiff's First Request for Admissions. Specifically, the Defendants' Responses state:

No. 17

Admit that the actions of Defendant Wayne C. Bolden were in accordance with the official policies and procedures of Gwinnett County at all times relevant to the claims asserted in Plaintiff's Complaint.

Response No. 17

Denied as stated. Defendants admit that Defendant Bolden's actions in this case did not contravene any rules or regulations of Gwinnett County, Georgia. However, Defendants deny that Defendant Gwinnett County possesses an official policy or procedure in reference to the actions taken by Defendant Bolden in this case.

(Plaintiff's Response to Issue of "custom or usage" [58–1]). The Requests for Admissions continue, with all admissions maintaining that the Defendants actions "did not contravene any rules or regulations of Gwinnett County," but specifically stating that "Defendants deny that Defendant Gwinnett County possesses an official policy or procedure in reference to the actions taken by Defendant Bolden in this case." The Plaintiff contends that the Defendants' Admissions acknowledge the existence of a policy of forcing employees to resign or be terminated, however, Defendants' Admissions plainly state that no such policy exists. In any event, there is no written policy or procedure, and no evidence of any practice of forcing employees to resign or be terminated.[7] When the Defendants answer that they do not have any such policy, the Court cannot read that to mean that they do.

The Plaintiff also alleges that Defendant Bolden's statements during his deposition demonstrate the existence of a practice or policy of forcing employees to resign or be fired, as follows:

Q: Were the actions that you've just described in that ten-minute meeting on June 29th in accordance with the official policies and procedures of Gwinnett county and the police department?

7. The Plaintiff has not introduced any evidence where any other former Gwinnett County employees claim to have been told to resign or be fired.

A: I'm not sure I know what you mean.

Q: Well, were you acting in accordance, to the best of your knowledge, with the policies and procedures of Gwinnett County?

A: As far as I know at that meeting, I was acting in the—yes, in the—within the policy guidelines. And I was also acting in the best interest of the employee, also, at that time, because at that time, when I say I was going to terminate him, I would have still had to follow the procedures and do the notice to terminate, and so forth, and follow through with the, you know, policies and procedures.

(Bolden's Deposition at 93). The Plaintiff claims that Defendant Bolden, in the above answers, has admitted the existence of a Gwinnett County policy whereby employees are forced to resign or be terminated. However, the Plaintiff cites Defendant Bolden's deposition testimony out of context. Just prior to the above testimony, Defendant Bolden denies that he forced the Plaintiff to resign or be terminated. Instead, Defendant Bolden states, in his deposition, that he met with the Plaintiff to give him notice of termination, but that the Plaintiff voluntarily resigned.[8] Defendant Bolden's above deposition reference to actions he took on June 29th is a reference to meeting with the Plaintiff to give him notice of termination. *See* (Bolden's Deposition at 90–94).

 A municipal policy does not have to be written, and a custom or a repetitive practice may suffice to impose municipal liability. *See Wetzel v. Hoffman,* 928 F.2d 376, 377 (11th Cir.1991) (persistent and widespread practice may be sufficient to demonstrate custom or policy of municipality). A plaintiff may demonstrate the liability of a municipality under Section 1983, by showing the "existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926. In this

case, there is no allegation or evidence of any other employee being forced to resign instead of being terminated. The record shows that the Plaintiff has not presented any evidence of such a custom or policy sufficient to withstand the Defendants' Motion for Summary Judgment.

Defendant Gwinnett County has shown that there is an absence of evidence to support an element of the Plaintiff's case— namely, a "custom or policy" of Gwinnett County. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 (11th Cir.1993) (citing *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437–38 (11th Cir.1991)). Once Defendants satisfy their burden, the burden shifts to the Plaintiff to show the existence of a genuine issue of material fact by setting forth specific facts in the record or by coming forward with additional evidence sufficient to withstand a directed verdict motion at trial. *Id.* at 1116–17. The Plaintiff has not shown, nor demonstrated that a genuine issue of material fact exists, that there is a custom, practice or policy of Gwinnett County of forcing employees to resign instead of facing formal termination. Similarly, the Court finds that the Defendants Bolden and White are not Gwinnett County officials with final policymaking authority regarding the termination of police officers. Therefore, the Court GRANTS the Defendants' Motion for Summary Judgment on the Plaintiff's claim under 42 U.S.C. § 1983, since there is no genuine issue of material fact on whether the alleged actions of Defendants Bolden and White were taken pursuant to a policy, practice or custom of Gwinnett County.

## X. *CONCLUSION*

The Court has reviewed the record and finds that even if the Plaintiff could show that he was constructively discharged by the Defendants actions, he would not be able to prevail on his claims under the American with Disabilities Act, the Rehabilitation Act of 1973, and his procedural due process claims brought pursuant to 42 U.S.C. § 1983.

---

8. In his deposition, Defendant Bolden does not remember who brought up the idea of the Plaintiff resigning, but does not think the topic of resigning was first raised by Defendant Bolden. (Bolden's Deposition at 92).

Therefore, Court **GRANTS** the Defendants' Motion for Summary Judgment and **ORDERS** the case **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**