**Michael ADAMCZYK, Plaintiff,**

**v.**

**CHIEF, BALTIMORE COUNTY POLICE DEPARTMENT and Baltimore County, Maryland, Defendants.**

**Civil No. H–96–1103.**

United States District Court, D. Maryland.

Jan. 29, 1997.

Michael Marshall and Schlachman, Belsky & Weiner, P.A., Baltimore, MD, for plaintiff.

Gregory E. Gaskins, Assistant County Attorney, Towson, MD, for defendants.

ALEXANDER HARVEY, II, Senior District Judge:

Plaintiff Michael Adamczyk has filed a civil action in this Court seeking relief under the Americans With Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* (the "Rehabilitation Act"). Named as defendants are the Chief of the Baltimore County Police Department and Baltimore County itself. Plaintiff, a Baltimore County Police Officer, alleges that defendants illegally demoted him from the position of lieutenant to that of corporal because of his alcoholism and depression and that defendants illegally failed to accommodate his disabilities. As relief, plaintiff seeks compensatory damages, attorneys' fees and costs and an order reinstating him to the rank of lieutenant.

Presently pending before the Court is defendants' motion to dismiss or for summary judgment. The parties have submitted memoranda, exhibits, affidavits and a transcript of certain administrative proceedings in support of and in opposition to the pending motion. In view of the numerous evidentiary materials submitted, defendants' pending motion will be treated as a motion for summary judgment. The parties have not requested a hearing, and the Court is satisfied that no hearing is necessary. *See* Local Rule 105.6. For the reasons stated herein, the Court has concluded that defendants' motion for summary judgment must be granted.

1. Because plaintiff is the non-movant here, the facts summarized below, where disputed, reflect either plaintiff's version of the events or the administrative board's determination of the facts to the extent that such version is supported by affidavits, testimony or documentary evidence.

I

*Facts*

The relevant facts, taken in the light most favorable to the plaintiff, are as follows.[1] Michael Adamczyk was hired as a police recruit by the Baltimore County Police Department (the "BCPD") on March 16, 1981. In 1985, he was promoted to corporal, and in September 1987 he was promoted to sergeant. On July 16, 1992, Adamczyk was promoted to lieutenant. Because of certain events occurring on June 30, 1994, an investigation of allegations of misconduct of plaintiff was undertaken by the Internal Affairs Section of the BCPD. Following an administrative hearing, Adamczyk was on July 25, 1995 demoted to corporal and transferred to another duty station.

Much but not all of Adamczyk's misconduct which led to his demotion occurred on June 30, 1994. According to information derived during the Internal Affairs Section investigation, Adamczyk, on June 30, 1994, in the presence of a corporal and a police officer on the rear parking lot of Precinct 1, Wilkens Station, asked another police officer, "Would you fuck that in that condition?", referring to female police officer Julie L. Phennicie, who was pregnant at the time and standing some 10 to 15 feet away. Officer Phennicie did not hear the comment.

Adamczyk then approached Phennicie and talked to her about a shift party planned for that evening. Phennicie stated that she could not drink beer due to her pregnancy, but remarked that if she could get the bottle caps and lick them, she would be fine. Adamczyk then replied that he had something else that she could lick. Phennicie interpreted the comment as being sexually suggestive and has characterized it as improper sexual innuendo. Later that day, two other officers heard Adamczyk asking, in the presence of Phennicie, whether anyone who

*Magnuson v. Peak Tech. Servs., Inc.,* 808 F.Supp. 500, 504 (E.D.Va.1992). Where plaintiff has not disputed facts established by the record, defendants' version, as supported by the record, is recounted herein.

was not "knocked up" was going to attend the party. Evidence produced at the administrative hearing did not, however, indicate that this comment was made directly to Officer Phennicie. The party, held near the campus of the University of Maryland at Baltimore County, began in the late evening of June 30, 1994. Various persons from the BCPD including Adamczyk and certain other individuals attended the party.

Adamczyk became intoxicated and acted in a highly inappropriate manner at the party. Many of his inappropriate acts were later found to be in violation of rules of the BCPD. First, Adamczyk was sitting on the tailgate of another police officer's personal vehicle and had a bottle of lotion in his hands. Witnesses reported that he held the bottle of lotion between his legs, simulated the motions of male masturbation, and then squeezed a portion of the lotion into his hand. Adamczyk then exclaimed, "Ooh, look at this," to suggest that he had ejaculated into his hand. Both Officer Phennicie and another female Officer, Helen Hoffman, were sitting nearby and witnessed the event. When Adamczyk made the above comment, Phennicie got up and walked away. Adamczyk then approached a male officer with the lotion in his hand and asked, "Here, you want this?" The officer pushed Adamczyk's hand away and tried to rub the lotion on Adamczyk's shirt. Adamczyk replied, "Oh, you are a fag." Next, Adamczyk sat next to Officer Hoffman and asked her to rub the lotion on his back. When she declined, he asked her if he could rub it on her back. Hoffman became upset and told him to "get the hell away." Also during the party, Adamczyk yelled within earshot of others in attendance: "I need some pussy, somebody get me some pussy."

As a result of complaints of plaintiff's misconduct at the shift party held on June 30, 1994, the Internal Affairs Section of the BCPD undertook an extensive investigation.

Several dozen witnesses were interviewed and gave statements. The investigation revealed earlier incidents in which Adamczyk had also made inappropriate sexual comments. Officer Phennicie reported that Adamczyk had made unsolicited comments containing sexual innuendos on an "ongoing basis."[2] On one earlier occasion, while Phennicie was working during Adamczyk's shift, she had a conversation with him about her boots being scuffed.[3] Adamczyk then polished her boots for her while the two were on duty. This incident led a sergeant to prepare business cards for plaintiff which read: "LT. M. ADAMCZYK, SHIFT COMMANDER, part-time shoeshines for pretty gals ... see me at the ... FISH BOWL...."[4] Adamczyk later gave one of these cards to Officer Phennicie.

Besides making offensive sexual remarks to female officers and engaging in other inappropriate conduct with sexual overtones, Adamczyk committed two additional improper acts. First, while at the June 30, 1994 party, he handed his badge to Commissioner Kim Gordon, ostensibly to be used if she was stopped by another officer on her way home from the party. Second, during the Internal Affairs investigation, Adamczyk attempted to solicit information from Officer Patricia Cronise about the type of questions being asked during the investigation. She stated that she felt "pressured" by his questioning.

As a result of the Internal Affairs Investigation, Adamczyk was charged administratively with 12 counts of improper conduct. Ten counts charged police misconduct; one count charged a violation of Title VII, and one count charged a violation of rules of the BCPD by giving his police badge to another person. On June 19, 1995, an administrative hearing was held before a hearing board pursuant to Md.Code Ann., Crimes & Punishments, Art. 27 § 730 (1996). Adamczyk was represented by counsel at the hearing.[5] During the hearing, two of the counts were

---

**2.** Some of plaintiff's fellow officers had nicknamed him "Snoopy", because they perceived him as "following women around, snooping like a dog in heat."

**3.** Plaintiff was not Phennicie's shift commander, but she did work on his shift from time to time.

**4.** The Fish Bowl was a local bar which was often frequented by Adamczyk.

**5.** At the hearing, plaintiff's attorney conceded in his opening statement that Adamczyk should be found guilty of some of the charges.

withdrawn. After hearing evidence over a period of three days, the administrative board on June 23, 1995 issued a written opinion, finding Adamczyk guilty of 7 of the 10 remaining counts including the charge that he had given away his badge in violation of departmental regulations.[6] The board recommended that Adamczyk be demoted to the rank of corporal and transferred. These recommendations where later accepted by Chief of Police Michael Gambrill pursuant to Art. 27 § 731, and Adamczyk was thereafter demoted and transferred.[7]

According to Adamczyk, he is an alcoholic and his conduct was caused by his alcoholism. However, the record here indicates that Adamczyk did not seek treatment for his alcoholism until after he had learned that an investigation of his conduct was under way. He then attended counselling sessions with a clinical psychologist commencing on July 14, 1994. Following subsequent consultations at the Psychology Department of Sheppard Pratt Hospital in February and March of 1995, Adamczyk was diagnosed as an alcoholic and as being severely depressed.[8] He began treatment programs on March 31, 1995, and successfully completed them on May 19, 1995. Adamczyk has since then been active in Alcoholics Anonymous and has not relapsed into alcoholism. According to Adamczyk's affidavit, the BCPD was aware of his enrollment in the treatment program in March of 1995. However, the BCPD had no knowledge that Adamczyk was an alcoholic when the Internal Affairs Section began its investigation.

On December 27, 1995, Adamczyk filed a Charge of Discrimination with the Maryland Commission on Human Relations, alleging that his demotion violated the ADA. Adamczyk received a Right–to–Sue letter on January 17, 1996 and timely filed this civil action in this Court on April 10, 1996. Thereafter,

the EEOC reopened his case for reconsideration of his claim, and this Court stayed further proceedings in this case until after the EEOC proceedings had been concluded. On September 24, 1996, the EEOC dismissed plaintiff's charge of discrimination, concluding that there was no violation of the ADA, because, *inter alia*, Adamczyk's "misconduct took place prior to treatment and prior to any knowledge by the employer of any disability on [his] part." By Order dated October 8, 1996, this Court lifted the stay previously entered. Thereafter, defendants filed the pending motion for summary judgment.

## II

### *Summary Judgment Principles*

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir. 1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. Rule 56(e), F.R.Civ.P. If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the bur-

---

**6.** The board found Adamczyk not guilty of inquiring whether "there were going to be girls at the party who aren't knocked up," not guilty of stating to a female officer who was waiting for a ride that "I would ride you anytime," and not guilty of making in the past comments with sexual overtones to female Officer Eaton.

**7.** Adamczyk did not appeal Chief Gambrill's decision to the Circuit Court for Baltimore County,

as permitted by Art. 27, § 732. The board's findings of fact are entitled to preclusive effect in this civil action. *Roberts v. County of Fairfax,* 937 F.Supp., 541, 545–46 (E.D.Va.1996).

**8.** The Court would note that one of plaintiff's treating psychologists, Dr. Gilbert Clapperton, made a diagnosis that plaintiff was not an alcoholic but was merely alcohol abusive.

den of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett*, 477 U.S. at 323, 106 S.Ct. at 2552.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by a plaintiff that the defendant may be liable under the claims alleged, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsup-

ported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53).

Applying these principles to the facts of this case, this Court has concluded that defendants' motion for summary judgment must be granted.

## III

### *Discussion*

The Fourth Circuit has explained that to establish a violation of Titles I and II of the ADA,[9] a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination *solely* on the basis of the disability. *See Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995) (emphasis added). While not conceding that plaintiff can prove the first two elements, defendants contend that they are entitled to summary judgment because plaintiff cannot on the record here establish the third element.[10] For the reasons discussed herein, this Court would agree.

The Fourth Circuit has recognized that alcoholism is a handicapping condition within the meaning of the Rehabilitation Act of 1973. *Rodgers v. Lehman*, 869 F.2d 253, 258 (4th Cir.1989). Plaintiff asserts that defendants demoted him because of his alcoholism in violation of both the ADA and the Rehabilitation Act. It is defendants' position that they did not violate the ADA or the Rehabilitation Act because they demoted Adamczyk for his misconduct, and not because of his alcoholism. In *Little v. FBI*, 1 F.3d 255, 259 (4th Cir.1993), the Fourth Circuit explained that "an employer subject to

9. Although plaintiff is suing under both the ADA and the Rehabilitation Act, the language of the two statutes is substantially the same and therefore the same analysis applies to both. *See Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1264–65 n. 9 (4th Cir.1995).

10. Defendants also argue that they are entitled to summary judgment because plaintiff's complaint does not contain the name of one of the parties

and because defendants were not named in the EEOC Charge of Discrimination. The Court is satisfied that plaintiff's complaint sufficiently meets the ADA's so-called "naming requirement" in that defendants both received notice of the violation and participated in the EEOC proceedings. *See Alvarado v. Board of Trustees*, 848 F.2d 457, 458–59 (4th Cir.1988).

the Rehabilitation Act must be permitted to terminate its employee on account of egregious misconduct, irrespective of whether the employee is handicapped." Defendants contend that even if Adamczyk was an alcoholic, federal law does not prevent them from demoting him for conduct that violates the rules and regulations of the BCPD. This Court would agree. Adamczyk's revolting behavior at the shift party quite obviously constituted egregious misconduct which was unbecoming to a Baltimore County Police Officer.[11] Whether or not he was intoxicated, what Adamczyk did and said at the party adversely affected the morale of other police officers, particularly the female officers in attendance. As the Fourth Circuit explained in *Little*, an employer may hold an alcoholic to the same standard of performance and behavior as others, even if the conduct is related to the person's alcoholism. *Little*, 1 F.3d at 258 (*citing* 42 Fed.Reg. 22,686 (1977)).

Adamczyk attempts to distinguish the circumstances here from the facts in *Little* and other similar cases on the ground that in those cases the employee had been fired or demoted because he had committed some crime or tort, or had been drinking on the job. Adamczyk argues that, in contrast to those cases, he has never been accused of drinking on the job, and that he did not commit a tort or a crime. Such a distinction is unavailing. In *Little*, the plaintiff had been fired because he was drinking while on duty in violation of FBI internal regulations. Although there were prior incidents of off-duty misconduct for which he was criminally convicted, plaintiff Little was ultimately fired because he violated non-criminal, non-tortious internal FBI rules. This Court is satisfied that an employer like the BCPD must be allowed to demote an alcoholic employee for offensive conduct which violates its own rules and regulations, whether or not the conduct in question is criminal or tortious in nature.

A recent case presenting facts similar to those here supports this conclusion. In *Rollison v. Gwinnett County*, 865 F.Supp. 1564

(N.D.Ga.1994), the court held that "[u]nder the ADA the employer is allowed to terminate and not accommodate an alcoholic employee, *if* the employee does not perform up to the same standard as all other employees, even if the behavior is related to the employee's alcoholism." *Id.* at 1572. The court determined that the plaintiff in that case was discharged because of his "off-duty behavior, which did not meet the standards of behavior that Gwinnett County required from its police officers." *Id.* at 1572–73. Similarly, Adamczyk was demoted because his off-duty conduct did not meet the standards which Baltimore County had the right to require of its police officers.

Under the circumstances here, it cannot be reasonably inferred that the BCPD charged Adamczyk with ten counts of misconduct because of his alcoholism. It has been recognized by several courts that an employee cannot succeed on a claim of discrimination under the ADA based on his disability when the employer was not even aware of the employee's disability. In *Davis v. Safeway, Inc.*, 1996 WL 266128 (N.D.Cal. May 14, 1996), defendant fired plaintiff because of his non-criminal, alcohol-related misconduct at an off-duty party. Plaintiff was unhappy with a performance review he had received earlier in the day and had started drinking. That evening he attended a party and swore at several of defendant's store managers. The next day, plaintiff placed himself into an alcohol rehabilitation program. Defendant promptly placed plaintiff on personal leave status, and then fired him twelve days later because of his behavior at the party. The court concluded that the defendant "had no knowledge, constructive or otherwise, of plaintiff's disability, and thus had no duty to act under the ADA." *Id.* at *5.

Adamczyk points out that the administrative board did know of his alcoholism when it rendered its decision, and he argues that the Chief of the BCPD accordingly had a duty under the ADA to make reasonable accommodations by allowing him to seek

---

**11.** Rule 11 of Article 1 of the BCPD's Rules and Regulations provides that misconduct of an officer which tends to undermine the good order or discipline of the Department or which reflects discredit upon the Department or its members shall be considered "conduct unbecoming a member" of the BCPD and subject to disciplinary action by the Chief of Police.

treatment before demoting him. Adamczyk relies heavily on *Whitlock v. Donovan*, 598 F.Supp. 126 (D.D.C.1984), *aff'd sub nom. Whitlock v. Brock*, 790 F.2d 964 (D.C.Cir. 1986). Plaintiff's reliance on *Whitlock* is misplaced. That case involved claims which were based in large part on statutes and regulations which imposed duties only on federal employees. Plaintiff Adamczyk is not employed by a federal agency and is therefore not entitled to the additional protections afforded an alcoholic federal employee by the statutes and regulations relied upon by the court in *Whitlock*. *See Roberts v. County of Fairfax*, 937 F.Supp. 541, 548–49 (E.D.Va.1996) (distinguishing *Whitlock* and rejecting the argument that that case can be read as recognizing a general obligation of all employers to make employees obtain treatment before disciplining them).

Adamczyk, in pressing his argument that, in response to his off-duty misconduct, the BCPD should have offered to treat his alcoholism instead of demoting him, relies on the following *dicta* in *Little*:

It is notable that Little's previous alcohol-related incidents all occurred while Little was off-duty. Rather than [having his employment] terminated, Little was referred for outpatient treatment, and, after completing that treatment, he was reinstated to full duty. It was only after Little was intoxicated while on duty on May 16, 1990, and only after he admitted such during an interview by his superiors, that the FBI asked him to resign and ultimately, when he did not resign, terminated [his employment].

1 F.3d at 259.

Based on this account of the manner in which the FBI treated the plaintiff in the *Little* case, Adamczyk would have this Court conclude that an alcoholic cannot be punished for off-duty misconduct but must be referred for treatment. *Little* supports no such requirement. The Fourth Circuit clearly held in *Little* that an employer may fire an employee because of his egregious misconduct, even if that employee is suffering from a disability like alcoholism. *Id.* at 258. In discussing employee misconduct of the sort involved here, the Fourth Circuit in *Little*

noted that "The Secretary of Health, Education, and Welfare specifically stated that the employer 'may hold a drug addict or alcoholic to the same standard of performance and behavior to which it holds others, even if any unsatisfactory performance or behavior is related to the person's drug addiction or alcoholism.'" *Id.* at 258 (*quoting* 42 Fed.Reg. 22,686 (1977)). The Court further explained that although the "Attorney General concluded that both alcoholics and drug addicts are handicapped for purposes of [the Act], he made clear that the Act does not protect alcoholics or drug addicts from the consequences of their misconduct." *Id.* at 258.

One district court recently rejected a plaintiff's argument that an alcoholic employee who showed up at work intoxicated could belatedly invoke the ADA's reasonable accommodation provision. *See Flynn v. Raytheon Co.*, 868 F.Supp. 383, 385–87, 387 n. 9 (D.Mass.1994). To permit an employee to rely on such a ploy would allow any employee, who drunkenly misbehaved and whose employer had no knowledge at the time of such misbehavior that the employee was an alcoholic, to evade punishment by declaring himself disabled.

In this particular case, evidence of record establishes that plaintiff was demoted because of misconduct occurring both at the party on June 30, 1994 and at other times. Plaintiff has not come forward with competent evidence demonstrating that the reasons advanced by defendants were a pretext for demoting him because of his alcoholism and depression. Under the circumstances here, the BCPD had no duty to accommodate Adamczyk's misconduct, even if it was caused by his alcoholism.

According to plaintiff, his behavior at the time of these offenses was causally related to his depression and alcoholism. The Court. would note, however, that Dr. Daniel Gutkin, one of plaintiff's treating psychologists, was of the opinion that Adamczyk's emotional distress was caused by his having been found at fault in the investigation undertaken by the Internal Affairs Section. Moreover, four of the seven counts of which Adamczyk was found guilty involved statements made or

acts undertaken at times when he had not even been drinking, much less when he was intoxicated. The causal relationship urged by plaintiff is much too remote for any finding that his demotion was due to discrimination based solely on his depression and alcoholism.

Plaintiff Adamczyk at all relevant times held a supervisory position as a lieutenant, while the females who witnessed his offensive conduct were merely low-ranking officers. When a supervisor harasses a subordinate by verbal or physical conduct of a sexual nature, that supervisor may be guilty of sexual harassment. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 65, 106 S.Ct. 2399, 2404, 2404–05, 91 L.Ed.2d 49 (1986). The BCPD was entirely justified in treating plaintiff's offensive behavior as evidence of sexual harassment by a supervisory employee. Had defendants not taken prompt remedial action by disciplining plaintiff, the BCPD itself might well have faced female officers' claims that the department condoned a hostile or abusive work environment. A police department like the BCPD must be allowed to legally demote even police officers suffering from alcoholism who egregiously offend female officers and disregard rules and standards which Baltimore County has established to regulate the conduct of its police force.

Accordingly, this Court is satisfied that defendants did not violate the ADA or the Rehabilitation Act by demoting plaintiff Adamczyk because of his misbehavior, even though a part of his wrongful conduct occurred when he was intoxicated.

### IV

#### *Conclusion*

For the reasons stated, defendants' motion for summary judgment will be granted. An appropriate Order will be entered by the Court.